David G. STAUFFACHER and John P. Stauffacher, Plaintiffs–Appellants,

v.

John A. BENNETT and First Heritage Savings Credit Union, Defendant–Appellee.

No. 91–3023.

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1992.

Decided July 28, 1992.

456

John C. Widule (argued), Elm Grove, Wis., for plaintiffs-appellants.

Steven P. Means (argued), James R. Troupis, Stephen L. Crocker, Michael, Best & Friedrich, James E. Bartzen, Henry A. Field, Jr., Boardman, Suhr, Curry & Field, Madison, Wis., for defendant-appellee.

Before CUMMINGS and POSNER, Circuit Judges, and WILL, Senior District Judge.[*]

POSNER, Circuit Judge.

David and John Stauffacher, residents of Wisconsin who invested millions of dollars in a Canadian gold-mining venture that went sour, brought suit against the venturer, Donald Dolan, and others, in a federal district court in Wisconsin. The Stauffachers now appeal from the dismissal, for want of personal jurisdiction, of their suit against the only defendants remaining in the case, First Heritage Savings Credit Union and John Bennett, an employee of the credit union. Both the credit union and Bennett, like Dolan, are Canadian residents.

The parties to the investment contract (actually contracts, but we can ignore that detail) were the Stauffachers and Dolan. Apparently the contract was negotiated in Canada while the Stauffachers were visiting there, though like much else in the case this is uncertain. They signed the contract in Wisconsin, and through their Wisconsin bank deposited the money for the investment in First Heritage in Canada. The only defendants who visited Wisconsin during the relevant period were Dolan and Donald Livesey, a lawyer who the plaintiffs claim assisted Dolan in promoting the venture. Although Bennett may have mailed some documents to the Stauffachers in Wisconsin and did make a phone call or two to them there, neither call (if there were two) was an attempt to solicit the Stauffachers' deposit. The suit charges mainly fraud and other violations of Wisconsin state law, but is garnished with RICO and federal securities claims. After Bennett and First Heritage were dismissed, the plaintiffs obtained a default judgment against Dolan and settled with the remaining defendants, producing the final judgment from which the plaintiffs appeal.

The only issue concerning the common law and RICO claims is whether Bennett and First Heritage come within Wisconsin's long-arm statute. As is generally the case with such statutes, *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1244 (7th Cir.1990); *Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir.1988), jurisdiction over a nonresident can be based either on his having a substantial, continuing "presence" in the state or on his performing there some acts related to the injury of which the plaintiff complains even if the acts don't add up to a solid presence. The first head of jurisdiction requires "substantial and not isolated activities within this state," Wis.Stat. § 801.05(1)(d), and is plainly not satisfied here and could not be, consistent with the due process clause. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). First Heritage (for the most part we shall not need to discuss Bennett, its employee, separately) did not solicit, create, nurture, or maintain, whether through personal contacts or long-distance communications, a continuing business relationship with anyone in the state. Had there been such a relationship, then even if no employee or other agent of the credit union had ever set foot in Wisconsin the credit union would have established a

* Hon. Hubert L. Will of the Northern District of Illinois, sitting by designation.

sufficient "presence" there to warrant an inference (tenuous as it might seem to be) that First Heritage was benefiting from services provided by the state and could therefore be required, as a quid pro quo, to submit to the jurisdiction of the state's courts. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.,* 906 F.2d 276, 281–82 (7th Cir. 1990). All the credit union actually did, however, apart from occasional, unspecified, and seemingly trivial communications by Bennett, was to receive a deposit from a Wisconsinite. This created a contract, but a contract isn't a "thick" enough relationship to establish presence. *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 478, 105 S.Ct. at 2185; *Afram Export Corp. v. Metallurgiki Halyps, S.A.,* 772 F.2d 1358, 1362–63 (7th Cir.1985); *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir. 1990). We would not expect anyone to argue that if the First National Bank of Chicago accepts a deposit from a man in Saudi Arabia, this thrusts the bank into the banking business in Saudi Arabia, thus exposing it to suit there by *any* resident of the kingdom for *anything* at all, whether or not the plaintiff is the depositor or his claim is related to the deposit. The bank's presence in Saudi Arabia would be so tenuous as to cross the line from permissible to impermissible legal fiction, generously as that line has been drawn in favor of extraterritorial jurisdiction. Yet that is the character of the plaintiffs' argument.

■ If a Wisconsinite claims to have been injured within the state by an act committed outside, the Wisconsin courts have jurisdiction over a claim arising from the injury (not just any claim, as when personal jurisdiction is based on "presence") despite the defendant's lack of a palpable presence. But only, so far as bears on this case, if "solicitation or service activities were carried on within this state by or on behalf of the defendant." Wis. Stat. § 801.05(4)(a). First Heritage carried on neither type of activity in Wisconsin. Bennett's one or two calls, and his mailing of some documents, were not solicitations;

whether they could be construed as service activities is impossible to glean from this record. There are other provisions of the long-arm statute but none remotely applicable.

The Stauffachers emphasize all the things *they* did in Wisconsin in connection with the gold-mining venture. But a plaintiff cannot obtain jurisdiction over a nonresident defendant by bustling about in his own state, however energetically. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Coté v. Wadel,* 796 F.2d 981, 984 (7th Cir.1986). They also warn us that in the age of the facsimile machine an emphasis on personal presence in the plaintiff's state is outmoded. It is they who are outmoded. Rather than utilize the facilities of the electronic age that they desire us to celebrate, apparently the Stauffachers trotted off to British Columbia to negotiate the contract in person, then came home and signed and (so far as appears) mailed it.

■ All this leaves out of account, however, the possibility that Livesey might be deemed an agent of First Heritage; and we may assume without having to decide that his two visits to Wisconsin on promotional missions related to the gold-mining venture were enough to satisfy the requirement of "solicitation" in the subsection just quoted. The problem is that although the plaintiffs continue to argue that Livesey was First Heritage's agent, he was not. He was Dolan's agent. His activities may have sufficed to make Dolan suable in Wisconsin—though the question is academic, since Dolan brought himself directly within that jurisdiction by his visits—but Dolan is not First Heritage.

■ For the same reason the Stauffachers cannot prevail by reference to the forum-selection clause in the investment contract. It is true that the provision is broadly worded: "any controversy or claim arising out of or relating to this Partnership Agreement shall be settled by the Federal United States District Court of the Western District of Wisconsin." And such clauses are enforceable. *Carnival Cruise*

*Lines, Inc. v. Shute,* —— U.S. ——, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972); *Northwestern National Ins. Co. v. Donovan,* 916 F.2d 372, 377 (7th Cir.1990). But the only remaining defendants, First Heritage and Bennett, are not parties to the agreement.

We can imagine an argument that Livesey was a member of the conspiracy to defraud the Stauffachers and First Heritage another member of it; and for most purposes the acts of one conspirator within the scope of the conspiracy are attributed to the others. Despite doubt expressed in Ann Althouse, "The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis," 52 *Fordham L.Rev.* 234, 251–54 (1983), that the due process clause permits a state to assert extra-territorial jurisdiction over a person who did not foresee that the conspiracy which he joined would commit acts within that state, we have difficulty understanding why personal jurisdiction should be an exception. If through one of its members a conspiracy inflicts an actionable wrong in one jurisdiction, the other members should not be allowed to escape being sued there by hiding in another jurisdiction. The analogy to agency is even more direct here, because the complaint alleges that Dolan and First Heritage were leagued in a RICO enterprise, and if Livesey was the agent of the enterprise, what more should be necessary to bring the enterprise, and hence First Heritage, a principal in it, within the long arm of the long-arm statute?

■ The problem with this approach, a problem recognized but not yet definitively resolved by the cases, is that it merges the jurisdictional issue with the merits. Whether there was a conspiracy here, or a RICO enterprise, or some other nefarious linkage among Dolan, First Heritage, and Livesey, is at the heart of the case on the merits. It would be more than awkward to postpone the jurisdictional issue to the merits; it would dissolve the issue. If the plaintiff won on the merits, the jurisdictional issue would be automatically resolved in his favor, while if he lost the defendant would waive the defense of personal jurisdiction and take the judgment for its preclusive value in subsequent suits. But to resolve the jurisdictional issue in advance would require the district court to conduct an evidentiary hearing as extensive as, and in fact duplicative of, the trial on the merits—either that or permit a nonresident to be dragged into court on mere allegations.

Parallel problems arise with other threshold issues, notably public-officer immunity in search and seizure cases, which often present factual questions similar or even identical to those presented by the plaintiff's substantive claim, such as probable cause. *Elliott v. Thomas,* 937 F.2d 338 (7th Cir.1991); *Llaguno v. Mingey,* 763 F.2d 1560, 1569 (7th Cir.1985) (en banc) (plurality opinion). Or consider the use of conspiracy theory to bring testimony within the coconspirator exception to the hearsay rule (Fed.R.Evid. 801(d)(2)(E)) before the prosecution has proved the existence of the conspiracy to the jury's satisfaction. *Bourjaily v. United States,* 483 U.S. 171, 175, 179–80, 107 S.Ct. 2775, 2780–81, 97 L.Ed.2d 144 (1987); *Martinez v. McCaughtry,* 951 F.2d 130, 135 (7th Cir.1991). The judge must determine the existence of a conspiracy by a preponderance of the evidence before he may allow the jury to consider the coconspirator's statement as evidence bearing upon the defendant's guilt. *United States v. Martinez de Ortiz,* 907 F.2d 629, 631–32 (7th Cir.1990) (en banc).

■ Another, and it might seem conclusive, parallel to our case is that when allegations of subject-matter jurisdiction are questioned by the defendant the judge must satisfy himself, if necessary by conducting an evidentiary hearing, that he has jurisdiction before he can proceed to the merits. *Kanzelberger v. Kanzelberger,* 782 F.2d 774, 777 (7th Cir.1986); *Metropolitan Life Ins. Co. v. Estate of Cammon,* 929 F.2d 1220, 1222–23 (7th Cir.1991). But that situation is different from ours in two respects. A judge has no power to decide a case over which he lacks subject-matter jurisdiction, whereas he can decide a case

though he lacks personal jurisdiction over the defendant, if the defendant waives the issue of personal jurisdiction. More important, the issue of subject-matter jurisdiction will rarely be the same issue as the issue on the merits, so there is no duplication of judicial effort in resolving the former by a pretrial evidentiary hearing.

The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough. Otherwise plaintiffs could drag defendants to remote forums for protracted proceedings even though there were grave reasons for questioning whether the defendant was actually suable in those forums. A defendant could always refuse to appear, and take his chances, but then it would be easy for the plaintiff, lacking an opponent, to "prove" that there really had been a conspiracy and so obtain a default judgment that the defendant could not upset. The cases diverge, however, on how much more than a nakedly conclusory allegation of conspiracy is required. Some cases insist, much as where the prosecution wants to place a coconspirator's statement in evidence, that the plaintiff seeking to obtain personal jurisdiction on a theory of conspiracy present sufficient evidence, whether by affidavit or otherwise, to enable the judge to make a reliable, albeit not definitive, determination, in advance of pretrial discovery and trial, that there really was a conspiracy. Other cases seem content with a minimal factual showing, or even just with specific allegations, of conspiracy. The diversity of approaches is illustrated by *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236–37 (6th Cir.1981); *Chandler v. Barclays Bank PLC*, 898 F.2d 1148, 1155 n. 3 (6th Cir.1990); *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir.1988) (per curiam); *Edmond v. United States Postal Service General Counsel*, 949 F.2d 415, 424–27 (D.C.Cir.1991); *First Chicago International v. United Exchange Co.*, 836 F.2d 1375, 1377–79 (D.C.Cir.1988), and *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787–88 (D.C.Cir.1983). For reasons explained below, we shall not have to choose in this case among the competing approaches.

Whether personal jurisdiction can be obtained under a state long-arm statute on a conspiracy rationale at all is a question of state law. *Davis v. A & J Electronics*, 792 F.2d 74, 76 (7th Cir.1986); *Textor v. Board of Regents*, 711 F.2d 1387, 1392–93 (7th Cir.1983). We have no idea whether the Wisconsin courts would adopt the rationale, but we needn't make a stab in the dark on the question, for the plaintiffs have made no attempt to show that there was a conspiracy. The problem goes deeper than a failure to make a preliminary evidentiary showing. While alleging a broad conspiracy, the Stauffachers have never claimed that Livesey was an agent *of the conspiracy*. They came closest in the complaint, when they said that the defendants, including Livesey, "aided and abetted, conspired, and perpetrated the myth of Don Dolan as being 'legitimate.'" But if this is a hint at a conspiracy rationale for personal jurisdiction at all, it is an obscure one. In their briefs both in the district court and in this court, the Stauffachers say that Livesay was Dolan's agent, which is true but irrelevant, and that he was First Heritage's agent, which without any elaboration (and they offer none) is false. They shy from taking the final step, which would be to claim that Livesey was an agent of the conspiracy (or the RICO enterprise) itself. When one of the judges suggested this theory to the plaintiffs' counsel at argument he naturally embraced it with alacrity and even asked for permission to file a supplementary brief elaborating it. But the time for that was in the district court, and had passed.

Thus far we have been discussing jurisdiction under Wisconsin's long-arm statute. That is all the plaintiffs have to work with so far as their claims under state law are concerned. But they have federal claims as well, so we must consider the jurisdictional provisions of the relevant federal statutes. The RICO statute authorizes nationwide service of process, 18 U.S.C. § 1965(b); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671–73 (7th Cir.

1987), but not *international* service. For that the RICO plaintiff must rely on the long-arm statute of the state in which he files his suit, *Brink's Mat Ltd. v. Diamond*, 906 F.2d 1519, 1521–23 (11th Cir. 1990), so the analysis is as above.

■ The service of process provision of the Securities Exchange Act, 15 U.S.C. § 78aa, however, authorizing as it does service on a defendant "wherever [he] may be found," has been interpreted to allow service abroad. *SEC v. International Swiss Investments Corp.*, 895 F.2d 1272, 1275 (9th Cir.1990). But this is provided that the defendants have the same contacts with the United States as they would have to have with Wisconsin in order to be suable in a court of that state under the "presence" theory of extraterritorial jurisdiction. *United Rope Distributors, Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534 (7th Cir.1991); *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 294 n. 3 (3d Cir.1985); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 418 (9th Cir.1977); *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2d Cir.1972) (Friendly, C.J.); Graham C. Lilly, "Jurisdiction over Domestic and Alien Defendants," 69 *Va.L.Rev.* 85, 132 (1983). Recall that extraterritorial jurisdiction on the basis of a defendant's activities within the jurisdiction is a quid for a quo that consists of being given the protection of local, in this case U.S., law. The quo is missing here. First Heritage obtains no significant benefit from the laws of the United States, because it conducts no significant business within the territorial domain of those laws. Besides its trivial connection with Wisconsin, its only other contact with the United States is that a few of its depositors live across the national boundary from it, in the State of Washington. The totality of First Heritage's U.S. contacts is too sparse to bring it within the grasp of the U.S. courts.

The suit was properly dismissed.

AFFIRMED.