C.H. JAMES & CO., INC.,
et al., Plaintiffs,

v.

FEDERAL FOOD MARKETERS
CO., et al., Defendants.

Civil Action No. 2:95–1119.

United States District Court,
S.D. West Virginia,
Charleston Division.

May 29, 1996.

Elizabeth B. Elmore and Gordon C. Lane, Charleston, WV, for plaintiffs.

Stephen R. Crislip, Katherine Venti and Erik T. Engle, Jackson & Kelly, Charleston, WV, and H. Kenneth Schroeder, Jr., Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendants' Motion to Dismiss for Improper Venue pursuant to *Rule* 12(b)(3) of the *Federal Rules of Civil Procedure.*[1] The parties have submitted their respective memoranda and the matter is mature for the Court's consideration. For reasons that follow, the motion is **DENIED** in its entirety.

---

1. In the alternative, Defendants request the case be transferred to the United States District Court for the District of New Jersey, Trenton for all further adjudication and resolution pursuant to 28 U.S.C. § 1406(a).

## FACTUAL BACKGROUND

The Amended Complaint alleges causes of action based upon breach of contract,[2] breach of the duty of good faith and fair dealing, promissory estoppel, misrepresentation, quasi-contract, forgery and outrage.[3] Plaintiffs assert the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.[4] Plaintiffs further enumerate several significant events that occurred in this judicial district supporting venue.

In the spring of 1992, Walter Rathbun[5] of Federal Food telephoned Plaintiffs in Charleston. Rathbun indicated he had suppliers lined up for certain government solicitations. Rathbun wished to bid on the solicitations in the name of Plaintiff Company to take advantage of a ten percent (10%) bidding preference given to Plaintiff Company by the government, because Plaintiff Company is a small, disadvantaged business entity.

Plaintiffs assert that, as an inducement for their entering into this agreement, Federal Food represented it would have sole responsibility for submitting the bids on the solicitations, administering any contracts awarded, and supplying all products in accordance with the contracts. In return, Plaintiffs would receive from Defendants a commission on the contracts.

Plaintiffs accepted Defendants' offer in Charleston. While no formal written contract memorialized the parties' agreement, a commission check, dated February 19, 1993, was mailed to Plaintiffs in Charleston.

Thereafter, Defendants forwarded, via the United States mail and facsimile, numerous pieces of correspondence concerning their agreement to Plaintiffs in Charleston. Plaintiffs assert they had no further contact with Defendants concerning the bids or solicitations.

On May 24, 1993, Plaintiffs learned Defendants did not have and could not find a qualified supplier for products to meet contractual requirements with the Government. Plaintiffs demanded Defendants fulfill their contractual responsibilities and supply the contracted products. Subsequently, Defendants communicated with Plaintiffs telephonically concerning potential contract suppliers.

Acting at the Defendants' direction, Plaintiffs assert they made every reasonable attempt to assist Defendants in fulfilling their contractual responsibility. Further, the Government directly contacted Plaintiffs in Charleston on various occasions concerning both contract performance and contract default. Despite Plaintiffs' efforts, Plaintiffs were unable to find alternate suppliers for the government contracts. Thereafter, Defendants failed to supply the requisite goods and the contracts were declared in default and terminated by the Government.

The Government proceeded to assess reprocurement costs against Plaintiff Company for the defaults. Plaintiffs repeatedly demanded that Defendants take action to appeal the contract terminations and assume responsibility for the assessed reprocurement costs. Plaintiffs assert Defendants

---

2. Count I alleges breach of contract. Count III alleges intentional breach of contract.

3. The Amended Complaint also contains several allegations of successorship liability.

4. Plaintiff C.H. James & Company ("Plaintiff Company") is a West Virginia corporation with its principal place of business located in Charleston, West Virginia. C.H. James, III ("Plaintiff James") is President of the company and a resident of the State of West Virginia. Defendant Eco Equipment Rental Corporation, d/b/a Federal Food Marketers Company, ("Federal Food") is incorporated in the State of Florida and was formerly incorporated in the State of New Jersey. Defendant Patten Point Marketing Services, Incorporated, d/b/a Liberty Food Marketers, ("Patten Point") is a Delaware corporation with its principal place of business in New Jersey.

Plaintiffs allege Defendant Eco transferred certain assets to Patten Point in exchange for certain nonvoting stock of Patten Point in the spring of 1995. Defendant Eco is currently an inactive corporation. Plaintiffs allege Patten Point operates from the same business location and uses the same telephone number as was used previously by Federal Food. Plaintiffs further assert Patten Point conducts the same business operations as were previously conducted by Federal Food, and one or more of the officers, directors, shareholders, or employees of Patten Point were officers, directors, shareholders or employees of Eco.

5. Mr. Rathbun, now deceased, was the President and owner of Eco Equipment Rental Corporation and did business as Federal Food.

failed and refused to perfect the appeals. To protect their own interests, Plaintiffs proceeded to file the appeals.

In addition to the contract-related claims, Plaintiffs assert an agent of Defendant Federal Food, without authorization from Plaintiffs, wrongfully forged the signature of Plaintiff James on bids submitted to the Government. These latter actions, which occurred outside this judicial district, form the basis of Plaintiffs' claims of forgery and outrage.

## APPLICATION OF THE LAW

■ In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *See, e.q., De Sole v. United States,* 947 F.2d 1169, 1171 (4th Cir.1991) (considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)); *Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993) (same), *cert. denied,* 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994); *see Ridgeway Coal Co. v. FMC Corp.,* 616 F.Supp. 404, 406–07 (S.D.W.Va.1985) (Haden, C.J.) (same) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

This action is founded solely upon diversity jurisdiction. Pursuant to 28 U.S.C. § 1391(a)(2):

"a civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in ... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...."

28 U.S.C. § 1391(a)(2) (1995).

■ Venue is "proper in *each* district that is the situs of a substantial part of the events or omissions giving rise to the claim." *PI, Inc. v. Quality Products, Inc.,* 907 F.Supp. 752, 757 (S.D.N.Y.1995) (emphasis added). Thus, venue may lie in more than one district. *Id.* (citing *Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 867 (2d Cir. 1992)). When challenged, plaintiff has the burden of establishing proper venue. *Bartholomew v. Virginia Chiropractors Ass'n, Inc.,* 612 F.2d 812, 816 (4th Cir.1979), *cert. denied,* 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980); *see also* 15 Charles A. Wright, *et al., Federal Practice and Procedure* § 3826 (1986).

■ Traditionally, courts held venue must be appropriate for each claim. *Bartel v. Federal Aviation Admin.,* 617 F.Supp. 190, 197 (D.D.C.1985) (citing *International Patent Dev. Corp. v. Wyomont Partners,* 489 F.Supp. 226, 230 (D.Nev.1980); 15 Charles A. Wright, *supra,* § 3808 at 42). Recently, however,

"there has been considerable erosion of the traditional rule, and ... federal courts have become increasingly willing to recognize the developing doctrine of 'pendent venue.' *See, e.g., Beattie v. United States,* 756 F.2d 91, 100–03 (D.C.Cir.1984). Under this theory, federal courts may exercise their discretion to hear claims as to which venue [is] lacking if those claims arise out of a common nucleus of operative fact with claims as to which venue is proper. *Id.* at 102."

*Id.* at n. 31; *see also VMS/PCA Limited Partnership v. PCA Partners Ltd. Partnership,* 727 F.Supp. 1167, 1174 (N.D.Ill.1989).[6]

---

6. Defendants erroneously maintain pendent venue is *"only* appropriate in cases alleging 'a single cause of action with separate grounds for relief.' "* Defs.' Reply at 2 n. 1 (quoting *Beattie,* 756 F.2d at 101) (emphasis added). The court in *Beattie* explained venue was appropriate in that action under "two discrete but interrelated theories." *Beattie,* 756 F.2d at 100. The theory relied upon by Defendants was only one theory illustrated by the court. The court acknowledged:

"[t]his notion of venue being required only for separate causes of action is still used, even though [the *Hurn v. Oursler,* 289 U.S. 238, 53

S.Ct. 586, 77 L.Ed. 1148 (1933)] concept of cause of action has been replaced with respect to subject matter jurisdiction by the doctrine of pendent jurisdiction announced in *United Mine Workers v. Gibbs* [383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("common nucleus of operative fact") ]."

*Id.* at 101. The court further recognized the doctrine of pendent venue is now well established. *Id.* (citing *Seamon v. Upham,* 563 F.Supp. 396 (E.D.Tex.1983); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 402 F.Supp. 262 (E.D.Pa.1975); *Laffey v. Northwest Airlines, Inc.,* 321 F.Supp. 1041 (D.D.C.1971) *Carolyn Che-*

The touchstones in the pendent venue analysis are judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants. *Beattie*, 756 F.2d at 103.

Here, Defendants voluntarily reached into Charleston, entered into and continued a business relationship with Plaintiffs. This business relationship is at issue in all claims alleged. Contrary to Defendants' assertions, the communications occurring within this judicial district were not "merely isolated events." Defs.' Mem. in Supp.Mot. to Dis. Imp.Ven. at 7. The Court concludes events that occurred in the Southern District of West Virginia were substantial and significant to this action.

· Furthermore, the alleged acts that occurred outside this district, which form the basis of Plaintiffs' claims of forgery and outrage, are appropriate for local consideration under the doctrine of pendent venue. These claims unquestionably arise out of the same nucleus of operative facts as the other claims. Judicial economy, convenience of the parties and fairness thus dictate that Plaintiffs' claims of forgery and outrage also be tried with those claims arising from West Virginia events.

*nilles, Inc. v. Ostow & Jacobs, Inc.,* 168 F.Supp. 894 (S.D.N.Y.1958)).