**Ahmad SADIGHI, et al., Plaintiffs,**

v.

**Ali DAGHIGHFEKR, et al., Defendants.**

**No. 2:98–2648–18.**

United States District Court,
D. South Carolina,
Charleston Division.

Jan. 5, 1999.

Mark Mason, Charleston, SC, for plaintiffs.

John Massalon, Charleston, SC, C. Allen Gibson, Jr., Charlesotn, SC, for defendants.

## ORDER

NORTON, District Judge.

This action is before the court on the Fekr Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted[1] and the Sealy Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.

### I. PROCEDURAL HISTORY

On September 11, 1998, Plaintiffs filed their Complaint against twenty-three Defendants. For simplicity, the Defendants have been labeled either "Fekr Defendants" or "Sealy Defendants." Plaintiffs sought relief for twenty causes of action: Racketeer Influenced and Corrupt Organizations Act (RICO), breach of contract, breach of contract with fraudulent intent, misappropriation of corporate opportunity, statutory wage act violations, tortious interference with contract, quantum meruit, unjust enrichment, rescission of alleged release, breach of fiduciary duty, fraud, civil conspiracy, Title VII

---

1. At the motions hearing, the court denied the Fekr Defendants' Motion to Strike and the Motions to Dismiss Based on Violations of Rule 8 and Rule 9(b).

violation, intentional infliction of emotional distress, and unfair trade practices.[2]

On September 18, 1998, the Fekr Defendants moved to dismiss and strike items from the Complaint. On September 29, 1998, the Sealy Defendants moved to dismiss for lack of personal jurisdiction and improper venue.

## II. BACKGROUND

In an effort to heed the advice of Ecclesiastes to "Let thy speech be short, comprehending much in few words," the court will attempt to summarize, and not reiterate, the Plaintiffs' voluminous allegations. *See Ecclesiastes* 32:8.[3] Ali Fekr is a real estate developer who owns a large number of residential golf communities. Plaintiffs' allegations of wrongdoing principally encompass transactions relating to the Golden Ocala residential project in Florida and the Dunes West project in South Carolina.

Plaintiffs allege that the Fekr Defendants have (1) attempted to bribe employees of Georgia–Pacific to obtain the Dunes West development at a reduced sales price; (2) bribed and obtained funds under false pretenses from employees of General American Life Insurance Company (GALIC); (3) misrepresented the value of infrastructure improvements to Golden Ocala Community Development District (GOCDD); and (4) sexually harassed Plaintiff NeSmith (including unwanted sexual advances and sexual intercourse leading to a constructive discharge); (5) wrongfully or constructively discharged the remaining Plaintiffs.

Plaintiffs allege that the Sealy Defendants, as bond underwriters for the Golden Ocala project, prepared the Preliminary Limited Offering Memorandum (PLOM) containing information they knew to be false about the Fekr Defendants, and they caused this PLOM to be disseminated by mail. Plaintiffs also allege that the Sealy Defendants prepared a "lulling letter" to assist with the formation of the GOCDD when the Marion

County Administrator and Utilities Director raised questions about the economic viability of the Golden Ocala project. Plaintiffs also allege that the Sealy Defendants conspired with the Fekr Defendants to remove Sadighi from his employment in Florida so that he would be ineligible to serve on the Board of the GOCDD and to replace him with Bret Sealy as head of construction on the Golden Ocala project.

## III. LAW/ANALYSIS

Generally, courts address issues relating to personal jurisdiction before reaching the merits of the plaintiff's claims. *See, e.g., Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 940 (11th Cir.1997); *Falkirk Mining Co. v. Japan Steel Works, Ltd.,* 906 F.2d 369, 372 (8th Cir.1990). Consequently, this court turns first to the Sealy Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue.

### A. Personal Jurisdiction Over the Sealy Defendants [4]

■ When a district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, Plaintiffs need only prove a *prima facie* case of personal jurisdiction. *See Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir.1993). In determining whether Plaintiffs have proved a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiffs['] favor." *Id.* Nevertheless, Plaintiffs' showing must be based on specific facts set forth in the record, *see Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc.,* 784 F.Supp. 306, 310 (D.S.C. 1992), and the district court must look to both Plaintiffs' and Defendants' proof in ruling upon the Sealy Defendants' Motion. *See Mylan Labs., Inc.,* 2 F.3d at 62.

---

2. Only three of these causes of action were alleged against the Sealy Defendants: RICO, tortious interference with contract, and civil conspiracy.

3. The court acknowledges that it has been unable to heed this Scriptural admonition in the remainder of its order.

4. The Fekr Defendants have not challenged personal jurisdiction in South Carolina.

Plaintiffs can attempt to establish personal jurisdiction over the Sealy Defendants by two methods: (1) the nationwide service of process provisions of the RICO statute and then pendent personal jurisdiction over the state causes of action or (2) by a traditional minimum contacts and due process analysis for all causes of action. Because Plaintiffs can establish personal jurisdiction over the Sealy Defendants under the first analysis, this court need not engage in the traditional personal jurisdiction analysis.

### 1. 18 U.S.C. § 1965: Nationwide Service of Process

■ The Sealy Defendants argue that Plaintiffs fail to state a colorable claim against them under RICO and so should not be able to take advantage of its nationwide service of process provisions. "When a federal claim is not wholly immaterial or insubstantial, a plaintiff is entitled to take advantage of the federal statute's nationwide service of process provision." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 942 (11th Cir. 1997); *cf. IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1055 (2d Cir.1993). The Sealy Defendants must meet the "high burden" [5] of demonstrating that Plaintiffs' RICO claim is not colorable, that is, the RICO claim is " 'so insubstantial, implausible, ... or otherwise devoid of merit' as to deprive [Plaintiffs] of the right to utilize RICO's nationwide service of process provision." *Republic of Panama,* 119 F.3d at 941 (*quoting IUE AFL–CIO Pension Fund,* 9 F.3d at 1055)). The Fourth Circuit has recently adopted similar reasoning. *See ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 629 (4th Cir.1997). In *ESAB Group,* the court of appeals found personal jurisdiction under the RICO statute and then approved of the exercise of pendent personal jurisdiction over the plaintiff's state law claims "so long as the federal [RICO] claim [was] not wholly immaterial or insubstantial." *Id.* (*citing Republic of Panama,* 119 F.3d at 942, 951 & n. 26).

The Fourth Circuit has also, in the context of an ERISA claim, noted that "[a] claim is colorable if it is arguable and nonfrivolous, whether or not it would succeed on the merits." *Davis v. Featherstone,* 97 F.3d 734, 737–38 (4th Cir.1996).

■ The Sealy Defendants have failed to carry their "high burden" of demonstrating that Plaintiffs' RICO claim is not even colorable. The Sealy Defendants argue that Plaintiffs' RICO claim is not colorable because they could not have violated RICO by tortiously interfering with contractual relations and by civil conspiracy as these actions do not constitute predicate acts as set forth in 18 U.S.C. § 1961(1).[6] Plaintiffs allege that the Sealy Defendants have, at the very least, engaged in a conspiracy to violate one of the substantive provisions of the RICO statute in violation of 18 U.S.C. § 1962(d). As part of a claim for a section 1962(d) violation, Plaintiffs do not need to allege that the Sealy Defendants committed at least two predicate acts, or even that they conspired to do so; instead, Plaintiffs can establish a RICO conspiracy claim by demonstrating that the Sealy Defendants agreed to the overall objective of the conspiracy. *See Salinas v. United States,* 522 U.S. 52, 118 S.Ct. 469, 476–77, 139 L.Ed.2d 352 (1997) (finding that a RICO conspiracy defendant does not need to commit or agree to commit two predicate acts because "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense"); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 950 (11th Cir.1997) ("A plaintiff can establish a RICO conspiracy claim ... by showing that the defendant agreed to the overall objective of the conspiracy."). Plaintiffs have alleged that the overall objective of the conspiracy between the Sealy Defendants and the Fekr Defendants was to defraud the GOCDD and that the conspiracy to remove Sadighi from Florida was a necessary and crucial step in that conspiracy. Plaintiff Sadighi alleges that he suffered injury as a

---

**5.** *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1056 (2d Cir.1993).

**6.** Section 1961(I) enumerates a list of state and federal crimes that constitute "racketeering activity" and so serve as "predicate acts" under the RICO statute. *See* 18 U.S.C. § 1961(1) (1994).

result of the conspiracy to remove him from Florida. The circuits are split on whether, in a section 1962(d) claim, a plaintiff's alleged injury need only flow from an overt act in furtherance of the conspiracy and not necessarily from the commission of a predicate act. *Compare, e.g., Schiffels v. Kemper Financial Servs., Inc.*, 978 F.2d 344, 351 (7th Cir.1992) (finding that a RICO plaintiff claiming a violation of section 1962(d) has standing to sue if the "complaint alleges an injury to [his] business or property proximately caused by an overt act in furtherance of a conspiracy to violate RICO, even though the overt act is not a predicate act required in a RICO pattern"),[7] *with Bowman v. Western Auto Supply Co.*, 985 F.2d 383, 388 (8th Cir.1993) (finding that a RICO plaintiff has standing to sue under section 1962(d) only if the plaintiff was harmed by a "RICO predicate act committed in furtherance of a conspiracy to violate RICO").[8] At least arguably, this circuit may follow the group of sister circuits which have held that a plaintiff has standing to assert a section 1962(d) claim if the plaintiff alleges injury resulting from an overt act in furtherance of the conspiracy. These courts have rejected the Sealy Defendants' argument that the commission of predicate acts is necessary to establish liability under section 1962(d). As a result, this court cannot find that the Sealy Defendants have carried their burden of establishing that Plaintiffs' RICO claim against them is implausible, insubstantial, or frivolous.[9] Because Plaintiffs have asserted a colorable RICO claim, they may take advantage of RICO's nationwide service of process provisions.

■ Plaintiffs assert personal jurisdiction over the Sealy Defendants pursuant to the RICO statute, which provides for nationwide service of process. The Fourth Circuit has referred to RICO as a "tormented statute."

*Combs v. Bakker*, 886 F.2d 673, 677 (4th Cir.1989). Nowhere is this torment more evident than in the circuit and district courts' interpretations of 18 U.S.C. § 1965. The circuits agree that this statute provides federal courts with nationwide service of process on defendants in RICO cases. However, the circuits are split on which subsection provides for such service. *Compare ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir.1997) (finding the nationwide service of process provision in subsection (d)), *and Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir.1997) ("Section 1965(d) of the RICO statute provides for ... nationwide service of process."), *with PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71–72 (2d Cir.1998) (finding that subsection 1965(b) provides for nationwide service of process and that this conclusion is "borne out by a complete reading of the statute, a course of action which has not been followed by the courts that have read § 1965(d) in isolation to reach the opposite conclusion"), *and Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir.1992) (noting that the nationwide service of process provision may be found in 18 U.S.C. § 1965(b)), *and Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 538–39 (9th Cir.1986) (finding that nationwide service of process derives from section 1965(b)), *and Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc.*, 784 F.Supp. 306, 311 (D.S.C.1992) (finding that section 1965(b) "enables a plaintiff to bring before a single court for trial all alleged members of a nationwide RICO conspiracy").

The Sealy Defendants urge this court to apply the *Magic Toyota* analysis so that Plaintiffs could not obtain personal jurisdiction over the Sealy Defendants unless they demonstrated that the ends of justice re-

7. For cases in agreement with the Seventh Circuit, see *Khurana v. Innovative Health Care Sys., Inc.*, 130 F.3d 143, 153 (5th Cir.1997); *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1169 (3d Cir.1989); *Flinders v. Datasec Corp.*, 742 F.Supp. 929, 934 (E.D.Va.1990).

8. For cases in agreement with the Eighth Circuit, see *Beck v. Prupis*, 162 F.3d 1090, 1097 (11th Cir.1998); *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 48 (1st Cir.1991); *Reddy v. Litton Indus.,*

*Inc.*, 912 F.2d 291, 295 (9th Cir.1990); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990).

9. Although the court has determined that Plaintiffs' RICO claim against the Sealy Defendants is at least colorable, the court has made no decision as to whether this claim would survive a Rule 12(b)(6) motion. Such a motion has not been filed.

quired the assertion of personal jurisdiction and such an assertion would not violate the due process clause of the Fifth Amendment. In contrast, Plaintiffs argue that *Magic Toyota* has been effectively overruled by the Fourth Circuit's *ESAB Group* decision. Under the analysis in the *ESAB Group* decision, Plaintiffs would only have to demonstrate that the assertion of personal jurisdiction did not offend the Fifth Amendment Due Process Clause. Both the *Magic Toyota* and the *ESAB Group* cases stemmed from an analysis of section 1965.

To determine whether subsection (b) or (d) applies, this court must undertake an analysis of each subsection of 18 U.S.C. § 1965. First, section 1965(a) provides that "[a]ny [RICO] civil action against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a) (1994). The Second Circuit recently interpreted this subsection to mean that "a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir.1998). However, both the *ESAB Group* and *Magic Toyota* courts interpreted subsection (a) as a provision authorizing venue. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir.1997); *Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc.*, 784 F.Supp. 306, 319–21(D.S.C.1992).

Second, subsection (b) provides that

[i]n any action [by a private plaintiff under RICO] in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States.

18 U.S.C. § 1965(b) (1994). The Second, Seventh, and Ninth Circuits, and this court in the *Magic Toyota* case, interpreted this subsection to mean that, if the ends of justice so required, a district court could serve process on a defendant residing elsewhere and

thus obtain personal jurisdiction over that defendant. *See PT United Can Co.*, 138 F.3d at 71; *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir.1992); *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 538–39 (9th Cir.1986); *Magic Toyota, Inc.*, 784 F.Supp. at 311. Under this interpretation, nationwide service of process is not automatic; instead, a plaintiff has to demonstrate that the ends of justice require the assertion of such process. As this court noted in *Magic Toyota*, section 1965(b) "operates in some cases to confer personal jurisdiction over defendants who would not otherwise be within the court's jurisdictional reach." *Magic Toyota, Inc.*, 784 F.Supp. at 311; *see also Lisak v. Mercantile Bancorp., Inc.*, 834 F.2d 668, 672 (7th Cir.1987) ("Section 1965(b) authorizes nationwide service so that at least one court will have jurisdiction over everyone connected with any RICO enterprise.").

Third, subsection (c) simply refers to service of subpoenas on witnesses.

Finally, subsection (d) provides that "[a]ll *other process* in any [civil RICO] action may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(d) (1994) (emphasis added). The Second Circuit has recently interpreted this subsection's reference to "all other process" to mean process other than the summons of a defendant (covered in subsection (b)) and the service of a subpoena on a witness (covered in subsection (c)). *See PT United Can Co.*, 138 F.3d at 72. By reading the subsections sequentially, "other process" logically must refer to process different from those stated in subsections (a) through (c). Such an interpretation "effectively provides for all eventualities without rendering any of the sections duplicative." *Id.* By the clear import of its language, subsection (b) refers to service of process to obtain personal jurisdiction over defendants residing outside of the district. As a result, subsection (d)'s "other process" must refer to process other than a summons.

Before the Second Circuit engaged in this sequential analysis of section 1965, the Fourth Circuit decided the *ESAB Group*

case. In *ESAB Group*, the Fourth Circuit found that section 1965(d) authorized nationwide service of process and so the exercise of personal jurisdiction in any district court. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir.1997). After analyzing plaintiff's claim for personal jurisdiction under the traditional minimum contacts analysis, the court stated that it was turning to the plaintiff's "alternative basis for personal jurisdiction based on 18 U.S.C. § 1965*(b)*." *Id.* (emphasis added). However, the court of appeals never again referred to subsection (b) in its opinion. Instead, without explanation, the Fourth Circuit proceeded to analyze the personal jurisdiction issue under section 1965(d). The Fourth Circuit interpreted subsection (d) to "authorize[ ] service of process in 'any judicial district in which such person ... is found.'" *Id.* at 627 (*quoting* 18 U.S.C. § 1965(d) (1994)). Because service of process was accomplished on the defendants where they were found, the court found that personal jurisdiction was established under section 1965(d). *Id.* Quoting one of its earlier opinions, the Fourth Circuit held that "'[w]here,' as here, 'Congress has authorized nationwide service of process [,] ... so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant.'" *Id.* at 626 (*quoting Hogue v. Milodon Eng'g, Inc.*, 736 F.2d 989, 991 (4th Cir.1984)). As a result of this nationwide service of process provision, "personal jurisdiction may be asserted over a defendant anywhere in the country." *Id.* at 628. By reading subsection (d) as providing nationwide service of process, and thus bypassing the restrictive language of subsection (b), the Fourth Circuit has permitted RICO plaintiffs to sue all Defendants in one forum without any need for a showing that the "ends of justice" required such an assertion of personal jurisdiction over nonresident defendants. Therefore, the "ends of justice" analysis of subsection (b) has no place in this court's determination of personal jurisdiction. If this court were not bound by Fourth Circuit precedent, it would apply the analysis of *Magic Toyota* and follow the Second Circuit's well-reasoned interpretation of section 1965.

Reluctantly, this court must agree with Plaintiffs that the section 1965(b) analysis performed in *Magic Toyota* has been effectively overruled by the *ESAB Group* case. As a result, the assertion of personal jurisdiction under the nationwide service of process provisions of RICO need only comply with Due Process requirements.

■ Because a federal statute confers personal jurisdiction in this case, it is the Fifth Amendment's Due Process Clause that is applicable to protect "the liberty interests of individuals against unfair burden and inconvenience." *ESAB Group, Inc.*, 126 F.3d at 626. According to the Fourth Circuit, "'it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern.'" *Id.* at 627 (*quoting Republic of Panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d 935, 947 (11th Cir.1997)). Due Process under the Fifth Amendment is not violated by the exercise of personal jurisdiction against the Sealy Defendants under section 1965(d). Although the Sealy Defendants will certainly experience some inconvenience by litigating this case in South Carolina, they have made no showing to this court that a forum in South Carolina would be so extremely inconvenient or so unfair as to outweigh the Congressional policy of permitting the exercise of personal jurisdiction pursuant to RICO's nationwide service of process provisions. *Id.* Therefore, this court may constitutionally exercise personal jurisdiction over the Sealy Defendants on Plaintiffs' RICO claim.

### 2. Pendent Personal Jurisdiction

■ Because this court has personal jurisdiction over the Sealy Defendants under the RICO statute, it may also exercise personal jurisdiction over Plaintiffs' state law claims against the Sealy Defendants. The Fourth Circuit has recently recognized the doctrine of pendent personal jurisdiction. In *ESAB Group*, the court of appeals ruled that

> [w]hen a federal statute authorizes a federal district court to exercise personal jurisdiction over a defendant beyond the borders of the district and the defendant is effectively brought before the court, we can find little reason not to authorize the

court to adjudicate a state claim properly within the court's subject matter jurisdiction so long as the facts of the federal and state claims arise from a common nucleus of operative fact. *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 628 (4th Cir.1997). All Plaintiffs' claims against the Sealy Defendants arise from the same nucleus of facts that relate to the Golden Ocala project in Florida. As part of the basis for their RICO claim against the Sealy Defendants, Plaintiffs allege that the Sealy Defendants prepared a "lulling letter" to assist with the formation of the GOCDD when the Marion County Administrator and Utilities Director raised questions about the economic viability of the Golden Ocala project. Plaintiffs also allege that the Sealy Defendants, as bond underwriters for the Golden Ocala project, prepared the Preliminary Limited Offering Memorandum (PLOM), and that this PLOM contained information they knew to be false about the Fekr Defendants, and they caused this PLOM to be disseminated by mail. Plaintiffs' state law claims involve allegations that the Sealy Defendants interfered with Plaintiff Sadighi's employment contract and conspired with the Fekr Defendants to remove him from his position on the GOCDD Board of Supervisors. Plaintiffs allege that Sadighi was removed from office to permit the Fekr-controlled GOCDD Board to approve of the use of bond funds to pay Fekr cash for existing infrastructure improvements that he had grossly overvalued. The facts involved in proving the federal and state allegations are so intertwined that it would "impose only a minimum burden [on the Sealy Defendants] to provide a defense on the factually-related state law claim." *Id.* at 628. As a result, this court has the authority, under the doctrine of pendent personal jurisdiction, to decide both the federal and state law claims alleged against the Sealy Defendants.

### B. Establishing Venue Over Plaintiffs' Claims Against the Sealy Defendants

Even though the Sealy Defendants may suffer some inconvenience as a result of litigating outside of their home state, this court has found that the inconvenience does not amount to a violation of the Fifth Amendment's Due Process Clause. Instead, because the Sealy Defendants are located in the United States, they " 'must look primarily to federal venue requirements for protection from onerous litigation.' " *ESAB Group, Inc.,* 126 F.3d at 627 (*quoting Hogue,* 736 F.2d at 991).

 When venue is challenged,[10] it is the plaintiff's burden to prove that venue is proper in the forum state for each defendant. *See Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc.,* 784 F.Supp. 306, 316 (D.S.C. 1992). Plaintiffs may assert venue based on the general venue provisions of 28 U.S.C. § 1391 and the venue provisions of the RICO statute. *Id.*

### 1. 28 U.S.C. § 1391

 In cases in which federal jurisdiction is not founded solely on diversity jurisdiction and all defendants do not reside in the same state, venue is proper "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2) (1994). Venue may be proper in more than one district on a single claim. *See, e.g., C.H. James & Co., Inc. v. Federal Food Marketers Co.,* 927 F.Supp. 187, 189 (S.D.W.Va.1996). Traditionally, venue must be appropriate for each claim. *Id.* Plaintiffs have alleged claims against the Sealy Defendants for civil conspiracy, interference with contractual relations, and a RICO violation. A substantial part of the events giving rise to the civil conspiracy and the tortious interference with contract claims occurred in Florida and South Carolina. Plaintiffs allege that the tortious interference with the contract "was carried out by and through a civil conspiracy." (Compl.¶ 108) The conspiracy, if it occurred at all, took place in Florida. However, the objects of the conspiracy were to remove Sadighi from his position on the GOCDD Board so that the Defendants could carry out their bond scheme, and to seize from Sadighi

---

**10.** The Fekr Defendants have not challenged venue in South Carolina. The Sealy Defendants moved to dismiss based on lack of personal jurisdiction and improper venue.

and Allied the contract to manage the construction projects for Fekr Enterprises. The first alleged objective was accomplished by transferring Sadighi from Florida to South Carolina so that he was no longer eligible to serve on the GOCDD Board. In contrast, the second objective may have required Sadighi's termination of employment in South Carolina so that the Sealy Defendants could be sure of seizing from Sadighi and Allied the contract to manage the Fekr Enterprises' construction projects. Thus, Sadighi's injury occurred in South Carolina as a result of an alleged civil conspiracy. A civil conspiracy consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes plaintiff special damage. *See Vaught v. Waites,* 300 S.C. 201, 387 S.E.2d 91, 95 (Ct.App.1989). "[T]he gravamen of the tort is the damage resulting to plaintiff from an overt act done pursuant to a common design." *Id.* Therefore, Plaintiff Sadighi's ultimate injury in this state could constitute a substantial part of the events giving rise to the civil conspiracy claim. Additionally, because Sadighi's ultimate termination may have been necessary to the Sealy Defendant's successful interference with his contract, the termination of his employment with Fekr constitutes a substantial part of the events giving rise to the claim for tortious interference with a contract. As a result, venue is proper in this state regarding the two state law claims.

█ Plaintiffs also allege a RICO violation against the Sealy Defendants. Most of the events relating to this claim took place in Florida. In that state, the Sealy Defendants issued the PLOM and sent the "lulling letter." (RICO Case Statement p.37, 38 ¶¶ D1, D2) Plaintiffs also allege that the Sealy Defendants and the Fekr Defendants conspired to transfer Plaintiff Sadighi from the Golden Ocala project in Florida to the Dunes West project in South Carolina, where he was ultimately terminated from his employment by Fekr two months later. (RICO Case Statement p.14 ¶ 22) If there were such a conspiracy between the Sealy Defendants and the Fekr Defendants, then this agreement most likely occurred outside of this state. Nevertheless, Plaintiffs argue that Sadighi suffered injury in this state as a result of this conspiracy and so venue should be proper in South Carolina. However, Sadighi's injury in this state was not an event that gave rise to his claim for a RICO violation against the Sealy Defendants within the meaning of section 1391(b)(2). Plaintiffs allege that the Sealy Defendants and the Fekr Defendants conspired to remove Sadighi as a public officer of the GOCDD by moving him from Florida to South Carolina, thereby destroying his Florida residency and rendering him ineligible to serve on the GOCDD Board. (RICO Case Statement p.105 ¶ (c)) Plaintiffs do not allege that continued employment with Fekr was a precondition to serving on the GOCDD Board. Therefore, Sadighi's termination by Fekr was not essential to the RICO conspiracy because destroying his Florida residency was sufficient to render him ineligible to serve on the GOCDD Board. (RICO Case Statement p.105 ¶ (c)) By removing Sadighi from the Board, Sadighi could no longer interfere with GOCDD approval of the bond funding and payment of inflated infrastructure costs. The conspiracy was complete upon his removal. Consequently, a substantial part of the events giving rise to the RICO claim did not occur in South Carolina so that venue is improper in this state as to the RICO claim.

### 2. 18 U.S.C. § 1965

Because venue is not proper as to the RICO claim pursuant to section 1391, this court next turns to the RICO statute to determine whether it provides an alternative source of venue for that claim in this District. The Fourth Circuit recently noted that a district court may determine whether venue is proper in a RICO case under section 1965(a) or (b). *See ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 627 (4th Cir. 1997).

Section 1965(a) provides that venue is proper in "any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a) (1994). Both Douglas J. and Bret Sealy are residents of the state of Florida. They are employed in the Orlando, Florida, office of Prager, McCarthy & Sealy; they are not residents of

South Carolina. Plaintiffs do not allege that the Sealy Defendants transact any business in South Carolina, have an agent here, or that they may be "found" in this state. Consequently, venue is not proper under 18 U.S.C. § 1965(a).

██ Nevertheless, the court may find venue to be proper pursuant to section 1965(b).[11] Section 1965(b) provides that

> [i]n any [civil RICO action] in any district of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshall thereof.

18 U.S.C. § 1965(b) (1994). The "ends of justice" do not require this court to find venue proper in this District. The availability of an alternative forum is a significant, although not the sole, factor in the "ends of justice" analysis. Florida is available as an alternative forum in this case. Florida would appear to have personal jurisdiction over both the Sealy Defendants and the Fekr Defendants. Both sets of Defendants have numerous contacts with that state. Moreover, venue appears to be proper in Florida against both sets of Defendants because a substantial part of the events underlying the RICO claim against each allegedly took place in that state. As this court noted in *Magic Toyota*, section 1965(b) "endeavors to ensure that at least one forum is available to a plaintiff litigating RICO conspiracy claims." *Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc.*, 784 F.Supp. 306, 312 (D.S.C. 1992). This court need not find venue proper in this district so that Plaintiffs have a forum in which they can sue all Defendants that participated in the RICO conspiracy because

that forum is already available in the Middle District of Florida.[12] Without any other evidence demonstrating why the "ends of justice" require haling the Sealy Defendants into this district, this court finds that venue is improper under section 1965(b) as to the Sealy Defendants.

### 3. Pendent Venue

██ Although courts have traditionally held that venue must be appropriate for each claim, a court may, in its discretion, hear claims as to which venue is lacking if those claims arise out of the same common nucleus of operative fact as other claims to which venue is proper. *See, e.g., C.H. James & Co. v. Federal Food Marketers Co.*, 927 F.Supp. 187, 189 (S.D.W.Va.1996). The touchstones of the doctrine of "pendent venue" are "judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants." *Id.* at 190. This doctrine has been applied to assert venue over pendent state law claims or another federal claim after venue has been established as to the principal federal law claim, so long as all the claims arise from the same nucleus of operative fact. *See Banfield v. UHS Home Attendants, Inc.*, 96 CIV. 4850(JFK), 1997 WL 342422, at *2 (S.D.N.Y. June 23, 1997) ("[A] federal court may in its discretion hear pendent claims which arise out of the same nucleus of operative fact as a properly venued federal law claim, even if venue of the pendent claim otherwise would not lie."); *Dooley v. United Techs. Corp.*, 786 F.Supp. 65, 81 (D.D.C.1992) (applying the doctrine of "pendent venue" to pendent state law claims once venue had been established for the RICO claim); *Egan v. Duell*, No. 88 C 4388, 1989 WL 36206, at *4 (N.D.Ill. Apr.13, 1989) (applying the doctrine of "pendent venue" to both state law and federal

---

**11.** The "ends of justice" analysis for venue under section 1965(b) is the same as the *Magic Toyota* analysis for personal jurisdiction under section 1965(b). *See Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc.*, 784 F.Supp. 306, 321 (D.S.C.1992).

**12.** C. Allen Gibson, attorney for the Sealy Defendants, has informed this court that any transfer of the case would probably be to the Orlando Division of the Middle District of Florida. Ap-

parently, that division does not have the same backlog of civil cases that the Tampa division labors under. Because the Golden Ocala project is located within the Orlando division and the Sealy Defendants are all residents of that division, the alternative forum appears to be in the Orlando Division of the Middle District of Florida. As a result, the backlogged civil docket in the Tampa division has no relevance to the "ends of justice" analysis.

claims after venue was established as to the principal federal claim); *Washington v. General Elec. Corp.*, 686 F.Supp. 361, 362 (D.D.C.1988) (noting that venue must be established for the principal cause of action in order for the doctrine of "pendent venue" to apply); *United States v. Trucking Management, Inc.*, CIV. No. 74–453, 1979 WL 278, at *11 (D.D.C. July 17, 1979) ("The doctrine of pendent venue is applied sparingly and usually in cases in which common law claims are jurisdictionally pendent to federal claims."). Although the claims against the Sealy Defendants are related to each other, the case law does not support an assertion of venue over the principal, federal law claim pursuant to the doctrine of "pendent venue" based upon a finding of proper venue over the pendent state law claims. *See, e.g., Nine Point Mesa of Nashville, Inc. v. Nine Point Mesa of Lexington, Inc.*, 769 F.Supp. 259, 263 & n. 4 (M.D.Tenn.1991) (refusing to apply the doctrine of "pendent venue" when venue was proper as to the state law claim but not as to the federal claim). Consequently, this court declines to find venue proper as to the RICO claim based on the doctrine of "pendent venue."

### C. Transfer of Venue

After finding that venue is improper in this forum at least as to Plaintiffs' RICO claim against the Sealy Defendants, it is within this court's discretion to dismiss that claim, or, "if it be in the interest of justice, [to] transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (1994). Dismissing the Sealy Defendants from this action would not contravene the purpose of 18 U.S.C. § 1965(b). *See Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc.*, 784 F.Supp. 306, 312 (D.S.C. 1992). However, such a ruling would necessarily create duplicative proceedings because the two separate actions would involve the same conspiracy. Therefore, it would be in the interests of justice to transfer the claims against the Sealy Defendants rather than dismiss the RICO claim.

A transfer of this action against the Sealy Defendants would also necessarily involve separate proceedings unless the entire case is transferred to the Middle District of Florida. Section 1404(a) provides for the transfer of any civil action to another district in which it might have been brought if to do so would be "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a) (1994). Even though the Defendants have not raised the issue of transfer of venue, this court can raise the issue sua sponte. *See Feller v. Brock*, 802 F.2d 722, 729 n. 7 (4th Cir.1986); *Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc.*, 784 F.Supp. 306, 321 (D.S.C. 1992). Transfer of the entire case would be under two separate transfer of venue provisions. As noted above, transfer of the RICO claim against the Sealy Defendants would be under 28 U.S.C. § 1406(a); transfer of the state law claims against the Sealy Defendants and the claims against the Fekr Defendants would be under 28 U.S.C. § 1404(a). Because the court raised the issue of transfer of venue sua sponte, the parties deserve an opportunity to be heard before a decision on that issue is rendered. *See Feller*, 802 F.2d at 729 n. 7. Consequently, the court invites the parties to brief the issue of whether this court should transfer the entire case to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). These memoranda should be submitted within twenty days from the date of this Order.[13]

If the court ultimately determines that it should not transfer the entire case to the Middle District of Florida, then the court will revisit the venue issue as to the Sealy Defendants to determine whether the ends of justice would require a finding of venue over the Sealy Defendants to prevent dual proceedings in Florida and South Carolina.

It is therefore,

**ORDERED,** that the Sealy Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction be **DENIED;**

13. The court will not decide the Fekr Defendants' Motion to Dismiss until it rules on this issue.

**ORDERED,** that the Sealy Defendants' Motion to Dismiss for Improper Venue be **DENIED;**

**FURTHER ORDERED,** that the parties submit memoranda within twenty days from the date of this Order regarding whether this entire case should be transferred to the Middle District of Florida.

**AND IT IS SO ORDERED.**