## EQUITABLE BANK

v.

## Charles FINN, et al.

## Charles FINN, et al.

v.

## EQUITABLE BANK, Empire Securities Group, Empire Capital Petroleum, Royal Petroleum Properties, Petro General Corporation.

### Civ. No. N–86–1840.

United States District Court, D. Maryland.

Oct. 14, 1987.

David F. Albright, Richard M. Kremen, John F. Kaufman, and Semmes, Bowen & Semmes, Baltimore, Md., for plaintiff.

Paul N. Sameth, and Adelberg, Rudow, Dorf, Hendler & Sameth, Baltimore, Md., and A. Barry Capello, and Cappello & Foley, Santa Barbara, Cal., for defendants.

Steven K. Fedder, and Davis, Fedder & Allen, Baltimore, Md., and Laura Metcoff Klaus, and Arter & Hadden, Washington, D.C., for counter defendants Royal Petroleum Properties, Empire Securities Group, Empire Capital Petroleum and Petro General Corp.

## MEMORANDUM

NORTHROP, Senior District Judge.

This case involves breach of contract claims by plaintiff, Equitable Bank ("the Bank"), against a number of investors, consolidated into a single case with Charles Finn as the representative defendant. The defendants ("defendant investors") have counterclaimed against Equitable, and have included as counterdefendants in that claim Empire Securities Group, Empire Capital Petroleum, Royal Petroleum Properties, and Petro General Corporation ("the nonbank counterdefendants").

Defendant investors filed an Amended Counterclaim alleging that all the counterdefendants violated Rule 10b-5 of the Securities Exchange Act of 1934 ("the Exchange Act") (Count I), violated antifraud and registration provisions of the California Corporate Securities Law of 1968 (Counts II–VI), committed common law fraud (Counts VII–IX) and constructive fraud and breach of fiduciary duty (Count X). Additional claims against the Bank only include breach of contract, racketeering, and rescission.

Pending before the Court are nonbank counterdefendants' Motion to Dismiss Counts I through X of the Amended Counterclaim; defendant investors' Motion for Transfer to a more convenient venue; and defendant investors' Motion to Join as Parties the Nonbank Counterdefendants. Since all of these motions raise issues of jurisdiction and venue, the Court will consider them together.

After careful consideration of the pleadings, the Court finds that no hearing is required. Local Rule 6. Because the Court finds that it does have personal jurisdiction over the nonbank counterdefendants, and that venue in this forum is proper, the motion for joinder will be granted and the motion to dismiss will be denied. Furthermore, because the Court finds that the choice of venue, whether in California or in Maryland, will inconvenience unavoidably one or more of the parties involved, defendant investors' Motion to Transfer will also be denied.

### FACTS

Nonbank counterdefendants Royal and Empire Securities created a joint venture through limited partnerships in 1982 for oil and gas drilling activities. Royal and Empire Securities were general partners. Empire Capital served as placement agent for investment interests in the partnerships on the East coast, and Gettins Financial Group, Inc. handled West coast sales. Petro drilled wells in Ohio and Kentucky and prepurchased gas from some of the partnerships. The Bank financed some of these investments via loans to the investors secured by the investors' interests in the limited partnerships.

Once the oil deal soured due to insufficient profits, the Bank filed suit against

individual investors for the principal and interest owed on the investment notes. Thirty complaints were filed with this District Court. Each defendant investor filed a counterclaim against Equitable and the four nonbank counterdefendants, and an amended counterclaim shortly thereafter. In December, 1986, the Court consolidated a number of these individual suits into this case.

I. *Personal Jurisdiction over Nonbank Counterdefendants and Proper Venue*

■ Under Fed.R.Civ.P. 4(f), service of process is permitted "anywhere within the territorial limits of the state in which the district court is held, and, *when authorized by a statute of the United States* or by these rules, beyond the territorial limits of that state." (Emphasis added). This provision usually would define the limits of this Court's personal jurisdiction over the nonbank counterdefendants who reside in Ohio. However, one of the Counts against the nonbank counterdefendants alleges a violation of Rule 10b–5 of the Exchange Act. When a violation of a provision of the Exchange Act is alleged in an action, the statutory provision governing jurisdiction under that Act, Section 27, comes into play and supercedes Fed.R.Civ.P. 4(f).

The jurisdictional provision, Section 27 of the Exchange Act, 15 U.S.C. § 78aa, provides as follows:

> Any suit or action brought to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

After reviewing the pleadings, this Court concludes that the nonbank counterdefendants do not reside in Maryland or transact business here, and cannot "be found" here. Nevertheless, this Court may have jurisdiction because Section 27 of the Exchange Act has been construed as permitting na-

tionwide service of process over a defendant. *Securities Investor Protection v. Vigman,* 764 F.2d 1309, 1315 (9th Cir.1985), *Mariash v. Morrill,* 496 F.2d 1138, 1142 (2d Cir.1974), *Fitzsimmons v. Barton,* 589 F.2d 330 (7th Cir.1979). In the above cited cases, courts have held that the defendants' due process rights are protected as long as the parties have "mimimum contacts" with the United States. *Securities Investor Protection Corporation,* 764 F.2d at 1316, *Mariash,* 496 F.2d at 1143, *Fitzsimmons,* 589 F.2d at 333. Therefore, under this analysis, this Court has personal jurisdiction over the nonbank counterdefendants under Section 27 because of their contacts with the State of Ohio, despite the fact that they have no contacts with the State of Maryland.

Venue in a securities action is also controlled by Section 27. The nonbank counterdefendants argue that venue is not proper since they, personally, have no contacts with this district and they committed no acts or transactions pursuant to a securities violation within the jurisdictional boundaries of this Court. The defendant investors respond by claiming that the "coconspirator venue theory" applies in this case and establishes proper venue over the counterclaims.

Although neither this District nor the Fourth Circuit has ruled on this theory, the co-conspirator venue theory has been adopted by several circuits and a number of federal districts in multi-defendant litigations alleging securities violations. *See e.g., Wyndham Associates v. Bintliff,* 398 F.2d 614, 619 (2d Cir.1968), *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968), *Hilgeman v. National Insurance Co. of America,* 547 F.2d 298 (5th Cir. 1977), *Securities Investor Protection Corporation v. Vigman,* 764 F.2d 1309 (9th Cir.1985); *Stewart v. Fry,* 575 F.Supp. 753 (E.D.Mo.1983); *DeMoss v. First Artists Production Co., Ltd.,* 571 F.Supp. 409 (N.D.Ohio 1983); *Hill v. Turner,* 492 F.Supp. 61 (M.D.Pa.1980); *Securities and Exchange Commission v. Diversified Industries, Inc.,* 465 F.Supp. 104 (D.D.C. 1979); *Warren v. Bokum Resources Corp.,*

433 F.Supp. 1360 (D.N.M.1977); *Bertozzi v. King Louie International, Inc.*, 420 F.Supp. 1166 (D.R.I.1976); *Arpet v. Homans*, 390 F.Supp. 908 (W.D.Pa.1975); *Securities and Exchange Commission v. National Student Marketing Corporation*, 360 F.Supp. 284 (D.D.C.1973); *Levin v. Great Western Sugar Co.*, 274 F.Supp. 974 (D.N.J.1967); *Zorn v. Anderson*, 263 F.Supp. 745 (S.D.N.Y.1966). The theory may apply in actions in which the plaintiff alleges "a common scheme of acts or transactions in violation of securities statutes...." *Securities Investor Protection Corporation v. Vigman*, 764 F.2d at 1317. In such actions, the theory permits a district court to provide venue for a plaintiff's claims against *all* the alleged defendants, even those who have no contacts with the forum state.

■ In order for a court to apply the co-conspirator venue theory, two prerequisites must be present. First, there must be an act by one or more of the defendants within the forum district which "represents more than an immaterial part of the allegedly illegal events." *Securities and Exchange Commission v. Diversified Industries*, 465 F.Supp. at 111. This act will establish venue over claims against at least one of the alleged defendants. Secondly, the plaintiff's complaint must plead adequately the elements of conspiracy to link the alleged defendants and give them notice. Once the two pre-requisites are satisfied, the Court may use the coconspirator venue theory to assert proper venue over all the defendants, even those who have no contact with the forum state. *Securities Investor Protection Corporation v. Vigman*, 764 F.2d at 1317; *Semegen v. Weidner*, 780 F.2d 727, 730 (9th Cir.1985), Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction § 3824 at 250 ("Wright & Miller"). The rationale behind this expansive use of venue authority is that by joining all the defendants in a conspiracy, such as that in a securities litigation, a court may avoid "duplicitous litigation and inconsistent results." *Securities Investor Protection Corporation v. Vigman*, 764 F.2d at 1317.

■ In order for the pleading to satisfy the specificity requirements for the co-conspirator venue theory, it must reach a level of specificity which approaches that required for fraud under Fed.R.Civ.P. 9(b). *Rose v. Arkansas Valley Environmental & Utility Authority*, 562 F.Supp. 1180, 1204 (W.D.Mo.1983).

"Specificity" in pleading means that the plaintiff must set forth the elements of the alleged conspiracy, and must present adequate facts to give the individual defendant notice of his or her role in the alleged conspiracy. One court has described the pleading of elements as follows:

> [A] complaint alleging conspiracy to violate securities laws must plead the following elements: (a) an agreement to accomplish a wrongful act, i.e., a securities violation; and (b) an act in furtherance of the conspiracy.

*Hirt v. U.M. Leasing Corp.*, 614 F.Supp. 1066, 1070 (D.C.Neb.1985).

Once the elements of the conspiracy are set forth, a court must look to the facts alleged by the plaintiff to determine whether each defendant has been clearly identified and linked to the conspiracy. The facts alleged must give each defendant adequate notice; the complaint must "allow the defendant to identify the conspiracy of which he is alleged to be a part, particularly in terms of its nature and effect on the plaintiff." *Id.* 562 F.Supp. at 1204.

The advantage of the co-conspirator venue theory is that it permits a court to adjudicate all the claims which flow from a conspiracy at one time, while respecting the due process rights of the individual defendants. This Court is persuaded that in a multi-defendant securities litigation, the co-conspirator venue theory provides efficient, uniform judicial resolution of disputes without prejudice to any of the parties involved. Therefore, this Court will adopt this theory and will apply it to the case at bar.

■ The first prerequisite, as explained above, is that there must be an act by one or more of the defendants which relates to the alleged illegal event and which occurs

in the forum district. Equitable Bank, one of the counterdefendants, has its principal offices here in Maryland. According to the pleadings, Equitable Bank conducted material portions of its transactions with the defendant investors here in Maryland, therefore, this requirement is satisfied. Since the Court has proper venue over Equitable, it may assert venue over the other counterdefendants.

Second, the Amended Complaint, which alleges the securities violation claim, must set forth the elements of a conspiracy with specificity. It must allege enough facts to give the defendants notice and to enable them to identify the alleged conspiracy and its effect on the defendant investors.

In ¶ 17, page 9, of the Amended Complaint, the defendant investors state as follows:

> Counterclaimant is informed and believes, and on that basis alleges, that the true facts were that Royal's wells were not operating profitably or producing sufficient revenue to make payments on investor notes. Counterdefendants, and each of them, jointly conspired to cover this fact by 'selling' to Petro gas which was unproduced and unrecovered, and representing to potential investors that the sale was current income, thus giving the false impression that the drilling programs were profitable. In addition, counterclaimant is informed and believes that Royal and Empire Securities misrepresented and overstated the profitability of Royal's wells, and the revenue available therefrom for payments on the investor notes by deferring overhead and administrative costs of the drilling programs without disclosing such deferments to potential investors.

The Amended Complaint incorporated this allegation into the securities violation claim under Count I. Count I alleges further that the defendant investors reasonably relied upon the alleged misrepresentation and that the misrepresentations were a material inducement leading to the defendant investors' decision to invest in the partnership. Amended Complaint, ¶ 27 at 12. The counterclaim also alleges substantial damage as a result of the misrepresentation.

This Court is satisfied that the counterdefendants, upon reading this complaint, could identify the alleged conspiracy, and their alleged roles therein, to conceal the oil wells' unprofitability and to misrepresent the true nature of the investment to the defendant investors. The effect on the defendant investors is set forth as required; they relied upon the alleged false information and invested in the partnerships to their detriment. Thus, the Amended Complaint meets the pleading requirements for a conspiracy allegation, and the co-conspirator venue theory may be applied in this case.

■ Under the co-conspirator venue theory, since this forum does have venue over the plaintiff-counterdefendant, Equitable Bank, and the pleadings are specific and present adequate facts, venue is proper as to all the other counterdefendants.

## II. *Joinder*

■ The Court now turns to defendant investors' Motion to Join the Nonbank Counterdefendants, i.e., Empire Securities Group, Inc., Empire Capital Corporation, Royal Petroleum Properties, Inc. and Petro General Corporation, as parties to this action under Fed.R.Civ.P. 20. Since the nonbank counterdefendants' objection to this motion is based upon the argument that this Court does not have personal jurisdiction over these counterdefendants, and the Court is satisfied that it does have jurisdiction, defendant investors' motion for joinder will be granted.

## III. *Transfer of Venue*

The next motion is Defendant investors' Motion for Transfer of Venue to a More Convenient Forum. The plaintiff-counterdefendant Equitable Bank and the nonbank counterdefendants have opposed this motion. The parties have raised the following issues which are relevant to this Court's decision on the motion: (a) Is the forum selection clause provided in the contracts between the Bank and the defendants, and which identifies Maryland as the forum for

disputes, enforceable? (2) If the clause is not enforceable, what do the principles under the federal transfer of venue statute, 28 U.S.C. § 1404(a), dictate in this case?

■ The federal transfer statute is silent as to the impact of forum-selection clauses. Section 1404(a) states: "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Subsection (b) provides that the decision regarding transfer lies with the discretion of the district court.

The bank argues that the forum selection clause is enforceable and has cited cases to support this proposition. *See e.g., M/S Bremen v. Zapata Offshore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Mercury Coal & Coke, Inc. v. Mannesmann Pipe and Steel Corp.,* 696 F.2d 315 (4th Cir.1982); *Bryant Electric Co. v. City of Fredericksburg,* 762 F.2d 1192 (4th Cir. 1985). However, the case at bar does not concern the enforcement of a forum-selection clause at the initiation of an action. This action is clearly underway in the contractual forum, the District of Maryland. The issue before this Court is *transfer,* and the factors to be considered here are not the same as in a contract enforcement case. "A contractual provision specifying the forum for any litigation arising out of the contract may, if valid, control venue in the first instance, but it cannot be decisive on a motion to transfer." *Wright & Miller,* Jurisdiction § 3847 at 371.

■] In considering a Motion for Transfer, this Court must examine two main factors: the convenience of the witnesses, and the interests of justice. 28 U.S.C. § 1404(a). The plaintiff's choice of forum is favored, and the defendant carries a heavy burden of proof to shift the forum. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), *Quinn v. Bowmar Publishing Co.,* 445 F.Supp. 780, 787 (D.Md.1978). Under the convenience prong, "[t]he burden is on the defendant to show the necessity of transfer, not by a bare balance of convenience, but by a preponderance." *Development Co. of Amer-*

*ica v. Insurance Company of North America,* 249 F.Supp. 117, 118–119 (D.Md. 1966).

■ In the case at bar, the defendant investors argue that they plan to call about 100 witnesses, almost all of whom reside in California, and that a transfer to California would be much more convenient for them. The plaintiff claims that its witnesses reside mostly in Maryland and that, of course, venue in Maryland is much more convenient. Both parties claim that material physical evidence is situated in their respective preferred forum state, and that it would be inconvenient to transfer the material across the country. On balance, it appears to this Court that the potential inconvenience to the plaintiff if the case was transferred to California is about the same as the current inconvenience borne by the defendant investors in the Maryland forum. "Equal inconvenience does not sustain the movant's burden of proof." *Quinn,* 445 F.Supp. at 787–788, *Snyder v. Hampton Industries,* 521 F.Supp. 130, 147 (D.C.Md.1981).

In considering the interests of justice under 28 U.S.C. § 1404(a), this Court finds that it does have jurisdiction over the non-bank counterdefendants, and venue is proper over the counterclaim. Consequently, the interests of justice are served by retaining the case in this jurisdiction. *Wright & Miller,* Jurisdiction § 3854.

For the reasons set forth above, the defendant investors' Motion for Transfer will be denied.