Joe H. MILLER and Robert W.
Pearce, Jr., Plaintiffs,

v.

Manuel P. ASENSIO, Asensio & Company, Inc., Asensio Capital Management, Inc. and John Does 1–20 Defendants.

No. C/A 2:99–1861–18.

United States District Court,
D. South Carolina,
Charleston Division.

June 16, 2000.

396

David C. Franceski, Philadelphia, PA, Joseph C. Wilson IV, Charleston, SC, Allan Poe Sloan, III, Charleston, SC, for plaintiff.

William Jefferson Leath, Jr., Charleston, SC, Timothy William Bouch, Charleston, SC, for defendant.

### ORDER

NORTON, District Judge.

This matter comes before the court on Defendants' Motion to Dismiss. For the reasons set forth below, this court denies Defendants' motion.

1. Because of the procedural posture of the case, the facts are as alleged by Plaintiffs.

## I. FACTUAL BACKGROUND [1]

### A. The Players

Plaintiffs Joe Miller and Robert Pearce allege that they were shareholders and owners of common stock of Chromatics Color Sciences International, Inc. (CCSI). Defendant Manuel Asensio is a stock research analyst in New York City. Defendant Asensio and Company is a New York-based investment bank and securities brokerage firm engaged in the business of trading securities for its own account and in producing and disseminating to the investing public analytical research reports regarding publicly traded companies. Defendant Asensio Capital Management, Inc. is a New York-based company engaged in the business of managing investments for individuals, mutual funds, hedge funds, investment companies, and other institutional investors. Defendants John Does 1–20 are yet unknown investment companies, investment managers, investment advisors, broker-dealers, registered representatives, associated persons of broker-dealers, and investors that Plaintiffs allege illegally traded in the publicly available common stock of CCSI.[2]

### B. The Game

This action arises out of the alleged unlawful manipulation and illegal short selling by Defendants of the common stock of CCSI, traded on the NASDAQ small cap market. On June 9, 1998, Plaintiffs allege that Defendants published and disseminated through means of interstate commerce, including the Internet, a false and fraudulent "research report," together with a "strong sell recommendation," which contained numerous material misrepresentations and omissions of fact regarding CCSI, a development-stage company engaged in the business of developing a medical product. According to Plaintiffs, these misrepresentations were designed to convey to the investing public

2. Any references to "Defendants" in this Order does not include John Does 1–20.

that CCSI's products were ineffective, worthless, lacking any market or commercialization potential and without any ability to generate significant revenues for CCSI, thereby suggesting that CCSI's then-current market price was grossly inflated and the company grossly overvalued. Because of the allegedly material misrepresentations, the price of CCSI stock fell precipitously.

During this time period, Defendants allegedly engaged in illegal short selling of CCSI's common stock in a successful effort to drive down the price of the stock to the profit of the short sellers and to the detriment of Plaintiffs. According to Plaintiffs, Defendants' short selling included selling on the "down tick," in violation of NASD Rules and SEC Rule 10a–1, and selling short "naked"[3] at a time when the short sellers neither owned, nor had any reason to believe that they could borrow, sufficient shares to make delivery on the short sales, in violation of applicable industry rules and regulations. Plaintiffs allege that because of the sharp decline in the price of CCSI stock, they were forced to sell their CCSI and other holdings at substantial losses.

Plaintiffs allege three causes of action against Defendants. First, Plaintiffs allege that Defendants violated § 10(b) of the Securities and Exchange Act of 1934 ("SEA of 1934") and Rule 10b–5, promulgated pursuant to the statute. Specifically, they allege that the material misstatements, the manipulation of stock prices, and the short selling were designed to defraud the market for CCSI common stock to the benefit of Defendants and to the detriment of the owners of CCSI common stock. Second, Plaintiffs allege that Defendants' actions constitute common-law fraud. Finally, Plaintiffs allege that Defendants were negligent in failing to con-

duct any appropriate investigation or due diligence before publishing the research report.

## II. Procedural History

On June 10, 1999, Plaintiffs filed a Complaint against Defendants in this court. On August 31, 1999, Defendants filed a Motion to Dismiss Based on Lack of Personal Jurisdiction and Failure to State a Claim Upon Which Relief May Be Granted. At the hearing on October 22, 1999, this court requested that the parties file supplemental briefs, which were subsequently filed with the court. The motion is now ripe for decision.

## III. Law/Analysis

### A. Personal Jurisdiction

Defendants ask the court to dismiss this action, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, because this court lacks personal jurisdiction. Plaintiffs argue that this court has personal jurisdiction over Defendants for the federal claim based upon the nationwide service of process provisions of the SEA of 1934 and pendent personal jurisdiction over Defendants for the state-law claims.[4] However, before the court considers whether the SEA of 1934 confers nationwide personal jurisdiction, it must first turn to the burden of proof in a jurisdictional analysis.

### 1. Burden of Proof

■ The Fourth Circuit has ruled that "[w]hen a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v.*

---

**3.** The court was not astonished to learn from counsel that the practice of selling short naked is rather less fun than might be imagined.

**4.** Despite the amount of space Defendants devoted to the issue in their briefs, Plaintiffs have not attempted to rest personal jurisdiction on the traditional "minimum contacts" analysis.

*Bakker*, 886 F.2d 673, 676 (4th Cir.1989). However, when

> the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

*Id.*

### 2. Applicability of the Personal Jurisdiction Provisions of the SEA of 1934

█ Plaintiffs have filed a cause of action alleging that Defendants violated § 10(b) of the SEA of 1934 and Rule 10b–5, promulgated pursuant to that Act. Defendants claim that Plaintiffs have failed to properly allege such a claim, which, if true, would preclude Plaintiffs from being able to use the provisions of the Act to assert personal jurisdiction over Defendants. " 'When a federal claim is not wholly immaterial or insubstantial, a plaintiff is entitled to take advantage of the federal statute's nationwide service of process provision.' " *Sadighi v. Daghighfekr*, 36 F.Supp.2d 267, 271 (D.S.C.1999) (*quoting Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir.1997)). Defendants "must meet the 'high burden' of demonstrating that Plaintiffs' [§ 10(b) and Rule 10b–5] claim is not colorable, that is, [the claim] is " 'so insubstantial, implausible, . . . or otherwise devoid of merit' as to deprive [Plaintiffs]

of the right to utilize . . . the nationwide service of process provision.' " *Id.* (*quoting Republic of Panama*, 119 F.3d at 941); *see also United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir.1993) (noting that a plaintiff can only take advantage of the nationwide service of process provisions of the SEA of 1934 if he has adequately stated a claim under the Act).

█ Defendants failed to satisfy their "high burden" of demonstrating that Plaintiffs' § 10(b) and Rule 10b–5 claims are not colorable. Under Fourth Circuit case law,

> to establish liability under § 10(b) of the Securities Exchange Act and under Rule 10b–5, a plaintiff must prove that, in connection with the purchase or sale of a security, '(1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied[5] (4) that proximately caused the plaintiff's damages.'

*Longman v. Food Lion, Inc.*, 197 F.3d 675, 682 (4th Cir.1999) (*quoting Cooke v. Manufactured Homes, Inc.*, 998 F.2d 1256, 1261 (4th Cir.1993)). Defendants argue that Plaintiffs' § 10(b) and Rule 10b–5 allegations do not present a colorable claim under the SEA of 1934 because the alleged misstatements did not occur "in connection with the purchase or sale of a security." In determining the breadth of this language, the "relevant definitional sections of the 1934 Act are for the most part unhelpful; they only declare generally that the terms 'purchase' and 'sale' shall include contracts to purchase or sell." *SEC Comm'n v. National Securities, Inc.*, 393 U.S. 453, 466, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). Although the Supreme Court has declared that "[s]ection 10(b) must be read flexibly, not technically and restrictively," *Superintendent of Ins.*

---

**5.** It is well-settled that plaintiffs in such cases need not prove actual reliance on the alleged false statements; instead, when plaintiffs pursue "a securities fraud action based on a fraud-on-the-market theory, [they may], to demonstrate reliance, rely on a presumption of direct reliance created by [their] reliance

on the integrity of the market." *Longman v. Food Lion, Inc.*, 197 F.3d 675, 682 n. 1 (4th Cir.1999). This presumption of reliance is equally applicable to plaintiffs whenever they are defrauded buyers or defrauded sellers. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 242, 246–47, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

*v. Bankers Life & Cas. Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), the Fourth Circuit has rejected a "de minimis touch" test that would "make any securities transaction actionable under Rule 10b–5 so long as there was some deceptive practice remotely 'touching' the transaction." *Head v. Head,* 759 F.2d 1172, 1175 (4th Cir.1985). Instead, a close reading of the scant Fourth Circuit case law on this issue convinces this court that the Fourth Circuit would require that the causal connection between the alleged fraud and the purchase or sale of securities is only satisfied when the alleged misrepresentations "pertain[ ] to the securities themselves," *id.,* in that the misrepresentations relate to "the value of the stock" or the pertinent company's "financial condition" and thus the value of its stock. *See Hunt v. Robinson,* 852 F.2d 786, 787 (4th Cir.1988) (distinguishing the case before the court from a Second Circuit case in which the plaintiff had alleged a misrepresentation of the value of the stock and the financial condition of the company); *Head,* 759 F.2d at 1176 (agreeing with the Second Circuit's approach in *Chemical Bank*[6] in which the court apparently limited Rule 10b–5 actions to cases involving allegations that the misrepresentations pertain to the securities themselves). Although this interpretation of the Fourth Circuit's jurisprudence would ensure that this Circuit is in harmony with other jurisdictions that have similarly interpreted the "in connection with" language to require a comparable causal nexus, *see, e.g., Popovice v. Milides,* 11 F.Supp.2d 638, 643 (E.D.Pa.1998) ("The requisite causal nexus exists when the alleged misrepresentation relates to the particular security's merits or value and a showing has been made that the plaintiff relied upon that misrepresentation in deciding whether to purchase or sell the security."), such a restrictive rule conflicts with the law of at least two other circuits. *See, e.g., Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 942–46 (3d Cir.1985) (arguing persuasively that although "Rule 10b–5 claims typically involve alleged misrepresentations with respect to the merits of a particular security[,] ... Rule 10b–5 also encompasses misrepresentations beyond those implicating the investment value of a particular security"); *Alley v. Miramon,* 614 F.2d 1372, 1378 (5th Cir.1980) (noting that the Fifth Circuit finds that the "in connection with" language "is satisfied when the proscribed conduct and the sale are part of the same fraudulent scheme"). Even though the court may be inclined to agree with the Third and Fifth Circuit's analysis if it were writing on a clean slate, this court is constrained, based upon the language of the available Fourth Circuit precedent, to apply a more restrictive approach.

Nevertheless, Plaintiffs have sufficiently plead allegations to satisfy the requirement that the alleged misrepresentations relate to the merits and value of the stock. In their Complaint, Plaintiffs make the following pertinent allegations:

14. . . . . Defendants Asensio, ACI, ACM, through and/or in conspiracy with Defendants John Does 1 through 20, engaged in heavy, illegal short selling of CCSI's common stock in a successful effort to drive down the price of the

---

6. *See Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 943 (2d Cir.1984). Subsequent district court opinions within the Second Circuit differ over the continued viability in that Circuit of this restriction on the parameters of Rule 10b–5 liability. *Compare Production Resource Group v. Stonebridge Partners Equity Fund,* 6 F.Supp.2d 236, 240 (S.D.N.Y.1998) (reviewing the post-*Chemical Bank* case law and holding that "the alleged misrepresentations made by defendants were not 'in connection with' the purchase or sale of securities, because they did not pertain to the value, nature or investment characteristics of the securities at issue"), *with Aiena v. Olsen,* 69 F.Supp.2d 521, 536–37 (S.D.N.Y. 1999) (recognizing that the Second Circuit has subsequently limited *Chemical Bank* and held that misrepresentations that had a direct pertinence to a securities transaction were actionable under Rule 10b–5, even though the fraud did not pertain to the value of the securities themselves).

stock to the substantial profit of the defendant short sellers and the substantial detriment of plaintiffs.....

. . . .

16. In support of their unlawful scheme to manipulate and depress the price of CCSI common stock, and in an effort to profit handsomely from the decline in CCSI's stock price, Defendants Asensio, ACI and ACM [produced, published and disseminated through means of interstate commerce, including the Internet, a false and fraudulent "research report," together with a "strong sell recommendation" in which they] [7] made numerous material misstatements, omissions of fact and baseless innuendo, including but not limited to the following:

(a) That the clinical testing of Colormate III only compared its bilirubin measurement performance to a physician's visual assessment;

(b) That repeated bilirubin testing is not normal and that testing by bilirubinomenter cannot replace blood tests for infant jaundice;

(c) That CCSI's Colormate III can only produce estimatès of total bilirubin levels, which are inadequate substitutes for indirect or direct bilirubin levels provided by blood tests;

(d) That CCSI had at least eight competitors in the bilirubinomenter market and its products were no better than other existing equivalents;

(e) That the potential market for CCSI's products was extremely limited;

(f) That CCSI's Colormate III was a very simple, easily duplicated device

of limited utility and imprecise bilirubin testing;

17. All of the foregoing material misstatements, together with defendants' omission of facts known to them and necessary to make the statements as made not misleading, were designed to convey to the investing public that CCSI's products were ineffective, worthless, lacking any market or commercialization potential, and without any ability to generate significant revenues for CCSI, thereby suggesting CCSI's then-current market price was grossly inflated and the company grossly overvalued.

. . . .

21. As a direct and proximate result of the aforementioned material misrepresentations, the price of CCSI [stock] declined precipitously, from $13^{15}\!/_{16}$ to $6\frac{1}{2}$ in eight days alone, eventually falling below $3.00 per share within four months of the publication of the "research report" by defendants Asensio and ACI.

22. As a direct and proximate result of the decline in the price of CCSI common stock caused by defendants' unlawful conduct, plaintiffs were forced to sell their CCSI and other stock holdings at substantial losses.

(Compl.¶¶ 16–17, 21–22) In short, Plaintiffs allege that Defendants made misrepresentations regarding the viability and thus the value of the company, which would evidently—and did—affect the value of the company's stock on the market, thereby defrauding the market and causing Plaintiffs to sell their shares in the company at a great loss.[8] At least in fraud-on-the-

---

**7.** For the most part, the bracketed language is quoted from paragraph 13 of Plaintiffs' Complaint.

**8.** Defendants cite several cases for the proposition that post-purchase or post-sale misrepresentations cannot support a § 10(b) and Rule 10b–5 action. *See Ausa Life Ins. Co. v. Dwyer (In re JWP Inc. Securities Litig.),* 928 F.Supp. 1239, 1253 (S.D.N.Y.1996) ("Misrepresentations made after the purchase or sale

in question cannot satisfy the 'in connection with' requirement."); *Schwartz v. Novo Industri, A/S,* 658 F.Supp. 795, 799 (S.D.N.Y. 1987) ("The statements made . . . subsequent to plaintiff's purchase[ ] are not in themselves actionable under Section 10(b)."); *Cahill v. Arthur Andersen & Co.,* 659 F.Supp. 1115, 1124 (S.D.N.Y.1986) ("[S]ince plaintiff had already sold his shares at the time of the publication of the preliminary prospectus, he cannot have been injured by defendant's al-

market cases, such misrepresentations that affect the integrity of the securities market or that constitute the sort of information that a reasonable investor would consider in evaluating a company's prospects satisfy the "in connection with" requirement. *See Steiner v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc. Stock Litig.)*, 991 F.2d 953, 965–67 (2d Cir.1993); *see also Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977) ("[There is n]o doubt Congress meant to prohibit the full range of ingenious devices that might be used to manipulate securities prices."). Consequently, Plaintiffs have asserted a colorable claim under the SEA of 1934, so that they may use its provisions to assert personal jurisdiction over Defendants.

### 3. Personal Jurisdiction Under the SEA of 1934

■ "When a violation of the Exchange Act is alleged in an action, the statutory provision governing jurisdiction under that Act, Section 27, comes into play ...." *Equitable Bank v. Finn*, 671 F.Supp. 374, 377 (D.Md.1987). This statute provides, in pertinent part, that

> [a]ny suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder ... may be brought in any ... district [wherein any act or transaction constituting the violation occurred] or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa (1994). Courts have interpreted this statute to provide for nationwide service of process, so that personal jurisdiction may be asserted in any district over any defendant who has sufficient contacts with the United States to satisfy the requirements of the Fifth Amendment's Due Process Clause. *See, e.g., United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir.1993); *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir.1991); *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1314–16 (9th Cir. 1985); *In re Triton Ltd. Securities Litig.*, 70 F.Supp.2d 678, 683 (E.D.Tex.1999); *In re Conner Bonds Litig.*, CIV. A. No. 88–33–CIV–5, 1988 WL 110054, at *14–15 (E.D.N.C. July 21, 1988); *Equitable Bank*, 671 F.Supp. at 377; *Sarratt v. Walker*, 405 F.Supp. 132, 133 (D.S.C.1975). *But see Smith v. Pittsburg Nat'l Bank*, 674 F.Supp. 542, 544–45 (W.D.Va.1987) (rejecting the "national contacts" test adopted by a majority of courts and requiring an "in-

---

legedly fraudulent acts occurring more than two years after the sale."). However, these cases are easily distinguishable from the case at bar. In *Ausa Life Ins. Co.*, the plaintiffs claimed that the defendants' misrepresentations induced them to purchase certain notes. The Southern District of New York simply held that any misrepresentations that occurred after the alleged fraud did not satisfy the "in connection with" requirement because the misrepresentations did not mislead the plaintiffs. *See Ausa Life Ins. Co.*, 928 F.Supp. at 1253. Similarly, in *Schwartz*, the plaintiff alleged that he was induced into purchasing stock by a fraudulently favorable outlook on the future earnings of the corporation. The Southern District of New York simply precluded the plaintiff from establishing a Rule 10b–5 violation through alleged misstatements that occurred after he purchased the stock and could therefore not

have had anything to do with his decision to purchase the stock. *See Schwartz*, 658 F.Supp. at 799.

In contrast, in this case, Plaintiffs did not allege that they were misled into purchasing stock by a fraudulently favorable outlook. Instead, it was Defendants' post-purchase misrepresentations that caused a fraud-on-the-market, the precipitous fall in stock prices, and the ultimate sale of Plaintiffs' stock at a fraudulently depressed price.

The court notes that the *Cahill* case is different to both the other cases cited by Defendants and to the case at bar. In *Cahill*, the court held that the plaintiff could not establish the "in connection with" requirement based on allegedly fraudulent acts that occurred after he had bought and sold his shares. *See Cahill*, 659 F.Supp. at 1124. As such, it is inapposite to the facts of this case.

termediate" analysis of defendant's contacts with the forum state). Defendants, of course, urge the court to apply the analysis in *Smith* and find that Defendants have insufficient contacts with the forum. This court declines Defendants' generous invitation to adopt such a maverick position against the overwhelming tide of courts that have adopted the "national contacts" test and in light of the Fourth Circuit's relatively recent adoption of a "national contacts" test in the context of another nationwide service of process statute. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir.1997) (holding that the nationwide service of process provision in the RICO statute established personal jurisdiction over any defendant in any federal court, so long as the assertion of jurisdiction was compatible with the Due Process Clause of the Fifth Amendment).

■ "The Fifth Amendment's Due Process Clause not only limits the extraterritorial scope of federal sovereign power, but also protects the liberty interests of individuals against unfair burden and inconvenience." *Id.* "However, when the defendant is located within the United States, he 'must look primarily to federal venue requirements for protection from onerous litigation,'" *id.* at 627 (*quoting Hogue v. Milodon Eng'g, Inc.*, 736 F.2d 989, 991 (4th Cir.1984)), "because 'it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern.'" *Id.* (*quoting Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 947 (11th Cir.1997)). All Defendants are located within the United States, and Defendants have not come forward with any circumstances that would demonstrate "such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy allowing the assertion of in personam jurisdiction." *Id.* Therefore, this court may constitutionally assert personal jurisdiction over Defendants under the nationwide service of process provisions of the SEA of 1934.

### 4. Pendent Personal Jurisdiction

■ Once this court has personal jurisdiction over Defendants on the SEA claim, it has the discretion to exercise personal jurisdiction over the remaining state-law claims for negligence and fraud based on the doctrine of pendent personal jurisdiction. The Fourth Circuit has recently recognized this doctrine. In *ESAB Group, Inc.*, the Fourth Circuit ruled that

> [w]hen a federal statute authorizes a federal district court to exercise personal jurisdiction over a defendant beyond the borders of the district and the defendant is effectively brought before the court, we can find little reason not to authorize the court to adjudicate a state claim properly within the court's subject matter jurisdiction so long as the facts of the federal and state claims arise from a common nucleus of operative fact.

*ESAB Group, Inc.*, 126 F.3d at 628. All Plaintiffs' claims against Defendants arise from a common nucleus of operative fact in that they relate to the allegedly false and misleading research report published by Defendants on their website.[9] As a result, this court has the authority, under the doctrine of pendent personal jurisdiction, to decide both the federal and state-law claims alleged against Defendants.

### B. Venue

"When venue is challenged, it is the plaintiff's burden to prove that venue is proper in the forum state ...." *Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc.*, 784 F.Supp. 306, 316 (D.S.C.1992). In discharging this burden, Plaintiffs may assert that venue is proper by employing the general venue statute and the special venue provisions of the SEA of 1934. *See Snyder v. Eastern Auto Distribs., Inc.*, 357 F.2d 552, 553 (4th Cir.1966) (holding that the general venue statute supplemented a

9. Defendants' web address is www.asen-sio.com.

special venue statute); *Magic Toyota, Inc.*, 784 F.Supp. at 316–20 (analyzing the issue of venue under both the applicable general and special venue provisions); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3803, at 10–11 (2d ed. 1986) ("A special venue statute, expressly covering venue of a particular kind of action, will control over the general venue statutes, but provisions in the general venue statutes are read as supplementing the special statute in the absence of contradictory restrictive indications in the special statute."). However, before the court turns to the merits of whether Plaintiffs have established that venue is proper in this district, this court must first consider whether Defendants waived their right to challenge venue in this district.

### 1. Waiver of Venue Challenge

■■■ "Venue is a personal privilege of the defendant and may be waived." *Broadcasting Co. of the Carolinas v. Flair Broad. Corp.*, 892 F.2d 372, 377 (4th Cir. 1989). "To avoid waiving the right to challenge venue, a party must either raise an objection in the answer or move to dismiss the case for improper venue under Federal Rule of Civil Procedure 12(b)(3)." *Id.* In their Motion to Dismiss, Defendants made the following indecipherable statement: "Pursuant to FRCP 12(b)(2)(3) and (1) and 12(b)(6) for an Order dismissing the claims against them on two grounds: 1) that this Court lacks personal jurisdiction over these Defendants, and 2) that the Complaint fails to state a claim upon which relief can be granted." (Def. Motion to Dismiss) Despite referencing the appropriate subsection for improper venue in their motion, Defendants then proceeded to argue only the personal jurisdiction and failure to state a claim arguments in their supporting memorandum. However, Defendants did raise the issue of venue in their Reply brief, in contravention of Local Rule 7.07, which restricts Replies to "matters raised initially in a response to a motion." Local Civil Rules 7.07 (D.S.C.).

Defendants then proceeded to challenge venue at oral argument. Considering all of Defendants' actions in presenting and arguing their challenge to venue, this court cannot conclude that Defendants fell through the thin ice of waiver upon which they were foolhardily skating.

### 2. Venue Under the SEA of 1934

■■■ Under the SEA of 1934, a suit to enforce liability under the act may be brought "(1) where the defendant may be found, (2) where the defendant is an inhabitant, (3) where the defendant transacts business, or (4) where an act or transaction constituting the violation occurred." *Sarratt v. Walker*, 405 F.Supp. 132, 133 (D.S.C.1975); *see* 15 U.S.C. § 78aa (1994). According to the uncontroverted affidavit filed by Defendants, they are not to be found in this forum, nor do they inhabit or transact any business in the Palmetto state. Consequently, if venue is proper in this District under the SEA of 1934, it must be grounded upon a finding that an act or transaction constituting the securities fraud violation occurred in this state. "The 'act' contemplated by the statute need not be crucial, nor must 'the fraudulent scheme be hatched in the forum district.' .... [However, the] act cannot be trivial; it must be 'of material importance to the consummation of the scheme.'" *Hilgeman v. National Ins. Co.*, 547 F.2d 298, 301 (5th Cir.1977) (*quoting Hooper v. Mountain States Securities Corp.*, 282 F.2d 195, 204, 205 (5th Cir.1960)); *see also Rose v. Arkansas Valley Envntl. & Util. Auth.*, 562 F.Supp. 1180, 1212 (W.D.Mo. 1983) ("[The] act does not need to form the 'core of the claim'"); *Carty v. Health–Chem Corp.*, 567 F.Supp. 1, 2 (E.D.Pa. 1982) ("[T]here need be only one act within the district for purposes of venue under the 1934 Act, so long as that act is more than an immaterial part of the alleged violation.").

■■■ No such act occurred in this forum. Unlike the vast majority of cases

this court has reviewed in which venue was grounded on the "act or transaction" provision of the SEA of 1934, Defendants neither committed an act in this forum, nor did they commit an act in another state that was intended to have an effect in this forum. *See Hilgeman,* 547 F.2d at 302 (finding that "the sending of [a] premium payment notice into [the forum state] was a step of material importance to [the] ... consummation of the ongoing scheme"); *Mariash v. Morrill,* 496 F.2d 1138, 1144 (2d Cir.1974) (finding that mailing something from the forum state was sufficient to satisfy venue when the item was an essential element in the alleged fraud); *In re Triton Ltd. Securities Litig.,* 70 F.Supp.2d 678, 687 (E.D.Tex.1999) (finding venue proper when press releases "were sent directly into the Eastern District of Texas"); *Steinberg & Lyman v. Takacs,* 690 F.Supp. 263, 267 (S.D.N.Y.1988) (holding that telephone calls made to persons within the forum in furtherance of the fraudulent scheme ensured that venue was proper in the forum); *Carty,* 567 F.Supp. at 2 (finding venue proper when a prospectus and annual and quarterly reports that contained the alleged misrepresentations and omissions were sent into the forum); *SEC v. Diversified Indus., Inc.,* 465 F.Supp. 104, 111 (D.D.C.1979) (finding that publicly disseminating a report to persons in the forum was sufficient for venue to be proper); *Keene Corp. v. Weber,* 394 F.Supp. 787, 791 (S.D.N.Y.1975) (noting that the act of a defendant outside the forum state is sufficient to satisfy the SEA of 1934 venue requirements if the act was intended to have an effect within the forum state in furtherance of the fraudulent scheme). Defendants merely posted information on a website in New York that could be read anywhere in the world by anyone, so long as the person had access to the Internet. Plaintiffs simply accessed the website in this forum and read the alleged misrepresentations here.

Plaintiffs argue that venue is proper because this is the state in which Plaintiffs accessed Defendants' website containing the alleged misrepresentations, and Defendants knew or should have known that their misrepresentations would be read outside the state in which they posted the information on the Internet. *See Texas Gulf Sulphur Co. v. Ritter,* 371 F.2d 145, 149 (10th Cir.1967) (finding that the district court did not err in denying a motion to dismiss for improper venue when the defendant's allegedly fraudulent press release was read in the forum state via the Wall Street Journal and the Dow–Jones broad tape); *Oxford First Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191, 198 (E.D.Pa.1974) (finding that venue was proper when, "in both the *Texas Sulphur* cases and in the instant case, the defendants knew or had reason to know their allegedly false information would be read and relied upon by potential plaintiffs"). For the reasons set forth below, this court declines to find venue proper under the SEA of 1934 based exclusively on the unilateral acts of a plaintiff in reading the alleged misrepresentations in the forum state, which had been posted on a passive Internet website in another state by a defendant.

First, if posting information on a website in New York was sufficient to permit venue in any district in which a plaintiff accessed the website and read the posting, then logically venue could lie in every state where a plaintiff resides or has access to a personal computer. Such a rule would eviscerate any protection for a defendant in an action under the SEA of 1934 because the Fourth Circuit has ruled in *ESAB Group, Inc.* that in cases involving the assertion of personal jurisdiction pursuant to a nationwide service of process provision and "the defendant is located within the United States, [the defendant] 'must look primarily to federal venue requirements for protection from onerous litigation.'" *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 627 (4th Cir.1997) (*quoting Hogue v. Milodon Eng'g, Inc.,* 736 F.2d 989, 991 (4th Cir.1984)). The court is not willing to strip putative defen-

dants of this protection and effectively create nationwide venue in actions under the SEA of 1934 involving the use of the Internet.

Second, the website in this case is passive, rather than interactive, and thus should not support a finding that venue in this forum is proper. The Eastern District of Michigan addressed a relatively similar issue in the context of an action for violations of the Lanham Act. *See IA, Inc. v. Thermacell Techs., Inc.*, 983 F.Supp. 697, 700–01 (E.D.Mich.1997). In *IA, Inc.*, the plaintiff pointed "primarily to an Internet web site operated by [the defendant] as support for the claim that venue is proper in this district." *Id.* at 700. The website, accessible to any computer user in the forum, contained the alleged misrepresentations that led to the confusion in the forum over the propriety of the insulation system at issue in the case. *See id.* Based on these facts and relying on case law in which courts found jurisdiction and venue proper when founded on interactive web sites, the plaintiff sought to prove that a substantial part of the events giving rise to the claim occurred in the forum state, thus rendering venue proper under 28 U.S.C. § 1391(b)(2).[10] *See id.* Even though the website cases cited by the plaintiff primarily involved personal jurisdiction, and venue only secondarily after a finding of purposeful availment, the court found that they were instructive and ultimately supported a finding that venue was proper under the "substantial part of the events" test. *See id.* at 701. Consequently, the court held that venue was proper when "[t]he alleged misrepresentations that underlie the Lanham Act claim appear on an interactive web site [in the forum state], which is also where the plaintiff's similar products are located." *Id.*

This case is different. Unlike the interactive website in *IA, Inc.*, Defendants'

website is passive in that Defendants merely posted information on the site; no information may be exchanged with the host computer, nor may the reader enter into contracts with Defendants via the website or download, transmit, or exchange files. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1123–26 (W.D.Pa.1997) (outlining the difference between passive web sites and moderately and fully-interactive websites). Courts have held almost universally that a passive website is insufficient to support the exercise of personal jurisdiction. *See, e.g., Brown v. Geha–Werke*, 69 F.Supp.2d 770, 777–78 (D.S.C.1999) (finding that a passive website in which the defendant merely advertised its product and provided its Internet e-mail address did not support the assertion of personal jurisdiction in the forum state). To rule otherwise would be to remove venue and personal jurisdiction as constraints on plaintiff's choice of forum in Internet-related cases. *See, e.g., GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C.Cir.2000) ("When stripped to its core, GTE's theory of jurisdiction rests on the claim that . . . mere accessibility of the defendants' websites establishes the necessary 'minimum contacts' with this forum. . . . This theory simply cannot hold water. Indeed, under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country. We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction."); *Bailey v. Turbine Design, Inc.*, 86 F.Supp.2d 790, 795 (W.D.Tenn.2000) (noting that a finding of personal jurisdiction based upon the existence of a passive website "would be to subscribe to the notion that anyone who posted information on the Internet is subject to nationwide jurisdiction, a leap this court is not prepared to make"). Like the

**10.** Although the *IA, Inc.* case involved an analysis of whether a "substantial part of the events" took place in the forum and this case involves the question of whether an act or transaction constituting a violation of the SEA of 1934 occurred in this forum, the two questions are sufficiently similar for the *IA, Inc.* case to be instructive here.

Eastern District of Michigan, this court can conceive of no reason why such a rule is not also instructive in the context of venue. *See IA, Inc.,* 983 F.Supp. at 700–01; *see also Shapiro v. Santa Fe Gaming Corp.,* No. 97 C 6117, 1998 WL 102677, at *2 (N.D.Ill. Feb.27, 1998) (unpublished opinion) ("[I]t is well-settled that the operation of a toll-free telephone number [11] and a passive, non-advertising website, without more, is insufficient to satisfy jurisdiction or venue.").

Therefore, for the reasons stated, this court finds that no "act" constituting the violation occurred in this forum, so that venue is not proper as to any Defendant under the venue provisions of the SEA of 1934.

### 3. Venue Under 28 U.S.C. § 1391

In cases in which federal jurisdiction is not founded solely on diversity jurisdiction, a civil action may be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, … (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b) (1994). Plaintiffs argue, and this court agrees, that venue is proper over the corporate Defendants in this case based upon § 1391(b)(1) and (c). A corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c) (1994). This court has already found that the corporate Defendants are subject to personal jurisdiction in this forum based upon the nationwide service of process provisions of the SEA of 1934. The corporate Defendants are thus deemed to reside in this forum. *See* 28 U.S.C. § 1391(b)(1) (1994). Venue is then proper over the corporate Defendants in this forum, so long as all Defendants reside in the same state. *See id.* § 1391(b)(1). The individual Defendant resides in New York and the corporate Defendants also reside in that state because it is their principal place of business. Consequently, venue is proper over the corporate Defendants.[12]

Plaintiffs argue that this court should then extend venue over the individual Defendant in this case under the so-called co-conspiracy venue theory.[13] According to the Ninth Circuit's articulation of the co-conspirator venue theory,

> where an action is brought against multiple defendants alleging a common scheme of acts or transactions in violation of securities statutes, so long as venue is established for any of the defendants in the forum district, venue is proper as to all defendants. This is true even in the absence of *any contact by some of the defendants* in the forum district.

*Washington Pub. Utils. Group v. United States Dist. Court for the W. Dist. of Wash.,* 843 F.2d 319, 328 (9th Cir.1987) (emphasis added); *see also Hilgeman v. National Ins. Co.,* 547 F.2d 298, 302 n. 12

---

**11.** The record does not reflect whether a toll-free telephone number appears on Defendants' website.

**12.** The court notes that there appears to be no statutory prohibition on finding venue proper in a forum state when all defendants reside in another state, so long as one defendant is also a resident of the forum state. *See* 28 U.S.C. § 1391(b)(1) (1994).

**13.** Because this court finds that the co-conspiracy venue theory is inapplicable here, the court need not address whether a plaintiff may use the general venue statute to assert venue over one set of defendants and then borrow a venue theory from the venue provisions of an applicable special venue statute to assert venue over another defendant, or whether, under the facts of this case, the Fourth Circuit would apply the intracorporate conspiracy doctrine to bar the application of this venue theory in an action under the SEA of 1934, or whether, if this doctrine were applicable, either of the two well-recognized exceptions to that doctrine would apply here.

(5th Cir.1977) (articulating the co-conspirator venue theory but stating that it was applicable "even in the absence of *any contact* or substantial contact *by any one defendant* within the district") (emphasis added); *Hill v. Turner,* 492 F.Supp. 61, 63 (M.D.Pa.1980) (stating rule as articulated in *Hilgeman* ); *Klepper Krop, Inc. v. Hanford,* 411 F.Supp. 276, 280 (D.Neb.1976) (stating same); *SEC v. National Student Mktg. Corp.,* 360 F.Supp. 284, 291 (D.D.C. 1973) (stating same).

 Although the court finds that the Fourth Circuit would adopt the co-conspiracy venue theory as it is so widely accepted in the circuit and district courts,[14] this court declines to apply the co-conspiracy venue theory under the facts of this case. "[T]he co-conspirator venue theory only applies where venue has been established over one conspirator by reason of an act or transaction performed in the district by that conspirator in furtherance of the conspiracy." *FS Photo, Inc. v. PictureVision, Inc.,* 48 F.Supp.2d 442, 446 (D.Del.1999); *see also Rose v. Arkansas Valley Envtl. & Utility Auth.,* 562 F.Supp. 1180, 1211 (W.D.Mo.1983) (noting that, when applying the co-conspirator venue theory, "courts have made clear that an act in the forum district, in furtherance of the fraudulent scheme, is vital; it is not sufficient, for purposes of venue in connection with all defendants, that venue may otherwise exist as to one or more defendants simply because they reside in the forum district, or are found there, or do business there"); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3824, at 250 (2d ed. 1986) ("[U]nder the co-conspirator theory of venue, in a multi-defendant securities proceeding in which a common scheme of acts or transactions to violate the securities statutes is alleged, *if any of the defendants performed an act or transaction in furtherance of the conspiracy in the forum*

*district, [then venue is proper* ] as to all defendants even in the absence of any contact or substantial contact by any one defendant with that district.") (emphasis added). The court's own research has not unearthed any cases in which venue was established under the co-conspirator venue theory by anything other than an act or transaction in the forum district by one of the defendants in furtherance of the conspiracy. *See, e.g., Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 620 (2d Cir.1968); *RMS Titanic, Inc. v. Geller,* No. 3:99CV2401(JCH), 2000 WL 306997, at *5 (D.Conn. Jan.10, 2000); *Steinberg & Lyman v. Takacs,* 690 F.Supp. 263, 267 (S.D.N.Y.1988); *Bertozzi v. King Louie Int'l, Inc.,* 420 F.Supp. 1166, 1172 (D.R.I. 1976); *Arpet, Ltd. v. Homans,* 390 F.Supp. 908, 911 (W.D.Pa.1975).

 Here, as discussed earlier, Plaintiffs have failed to allege that any of the Defendants performed an act or transaction in furtherance of the conspiracy within this forum. Even though Congress has sought to permit the widest possible choice of forums for securities fraud plaintiffs, *see Stanley Works v. Kain,* 833 F.Supp. 134, 137 (D.Conn.1993), this court cannot conclude that venue is proper over the individual Defendant in this case when a substantial part of the events did not take place here, he does not reside in this state, he has not transacted business here, he cannot be found here, he did not commit an act or transaction in this state, and nor did either of the two corporate Defendants with which he is alleged to have conspired. Consequently, although the general venue statute renders venue proper in this District as to the corporate Defendants, the co-conspirator venue theory cannot provide a basis for venue over the individual Defendant.

**14.** *See, e.g., Securities Inv. Protection Corp. v. Vigman,* 764 F.2d 1309, 1318 (9th Cir.1985) ("The strong policy favoring the litigation of related claims in the same forum supports the application of a co-conspirator venue theory in actions based upon violations of federal securities statutes.").

### 4. Pendent Venue Over State-law Claims

██ This court must now address the issue of pendent venue over the state-law claims because venue has been established as to the corporate Defendants only as to the federal claim, based upon a combination of the provisions of the general venue statute and the nationwide service of process provisions of the SEA of 1934. *See* 15 U.S.C. § 78aa (1994); 28 U.S.C. § 1391(b)(1), (c) (1994). This court has recently addressed the issue of pendent venue in the context of a RICO case. *See Sadighi v. Daghighfekr,* 36 F.Supp.2d 267, 277–78 (D.S.C.1999). "Although courts have traditionally held that venue must be appropriate for each claim, a court may, in its discretion, hear claims as to which venue is lacking if those claims arise out of the same common nucleus of operative fact as other claims to which venue is proper." *Id.* at 277. The doctrine of pendent venue "has been applied to assert venue over pendent state-law claims or another federal claim after venue has been established as to the principal federal law claim, so long as all the claims arise from the same nucleus of operative fact." *Id.* (collecting cases). In this case, venue has already been established against the corporate Defendants in the securities fraud cause of action, and the state-law claims of fraud and negligence unquestionably arise from the same nucleus of operative fact. Consequently, venue is proper in this district as to all three causes of action against the corporate Defendants.

### C. Severance or Transfer of Venue

Although this court has personal jurisdiction over all Defendants, venue is proper only as to the corporate Defendants. After finding that venue is improper as to the individual Defendant, it is within this court's discretion to dismiss the claims against that Defendant. *See* 28 U.S.C. § 1406(a) (Supp.1999). However, such a dismissal could result in duplicative proceedings in New York and in South Carolina. Alternatively, this court also has the discretion to transfer the entire case to the appropriate district in New York, transferring the claims against the individual Defendant under 28 U.S.C. § 1406(a) and the claims against the corporate Defendants under 28 U.S.C. § 1404(a).[15] *See Sadighi v. Daghighfekr,* 36 F.Supp.2d 267, 278 (D.S.C.1999). "Even though the Defendants have not raised the issue of transfer of venue, this court can raise the issue sua sponte." *Id.* However, "[b]ecause the court raised the issue of transfer of venue *sua sponte,* the parties deserve an opportunity to be heard before a decision on that issue is rendered." *See id. (citing Feller v. Brock,* 802 F.2d 722, 729 n. 7 (4th Cir.1986)). Consequently, the court invites the parties to brief the issue of whether the entire case should be transferred to the appropriate district in New York pursuant to §§ 1404(a) and 1406(a). The parties' memoranda must be submitted by July 10, 2000.

### IV. CONCLUSION

For the foregoing reasons, this court finds that personal jurisdiction may be asserted against all Defendants but that venue is proper only as to the corporate Defendants.

It is therefore,

**ORDERED,** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED;**

**ORDERED,** that Defendants' Motion to Dismiss for Improper Venue is **DENIED;**

---

**15.** Section 1404(a) provides a district court with discretion to transfer, "[f]or the convenience of parties and witnesses, in the interest of justice," any civil action to another district where venue is also proper. *See* 28 U.S.C. § 1404(a) (Supp.1999). Section 1406(a) provides a district court with discretion, "if it be in the interest of justice," to transfer a case from the forum district where venue is improper to a district where venue is proper. *See* 28 U.S.C. § 1406(a) (Supp.1999).

IT IS FURTHER ORDERED, that the parties submit memoranda by July 10, 2000 regarding whether this entire case should be transferred to the appropriate district in New York.[16]

AND IT IS SO ORDERED.

16. This court need not decide the merits of Defendants' Rule 12(b)(6) motion until it rules on the issue of transfer of venue.